515 So.2d 1163 (1987)
MISSISSIPPI PUBLISHERS CORPORATION
v.
The Honorable William F. COLEMAN, Judge of the Circuit Court of the Seventh Circuit Court District for the State of Mississippi, Circuit Court of Hinds County, First Judicial District.
No. DP-27.
Supreme Court of Mississippi.
November 18, 1987.
Rehearing Denied December 16, 1987.
Leonard D. Van Slyke, Jr., Julie E. Chaffin, Terryl K. Rushing, Thomas, Price, Alston, Jones & Davis, Jackson, for appellant.
*1164 Edwin Lloyd Pittman, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., Donald G. Barlow and Felicia C. Adams, Sp. Asst. Attys. Gen., Jackson, for appellee.
Stephen B. Bright, Palmer Singleton & Clive A. Stafford Smith, Atlanta, Ga., for Marion A. Pruett, defendant.
En Banc.
ANDERSON, Justice, for the Court:
This matter is before the Court on Mississippi Publishers Corporation's petition for a writ of mandamus or other extraordinary relief. Petitioner seeks an order requiring the Circuit Court of Hinds County, Judge William Coleman presiding, to vacate certain orders having the effect of closing the files and pre-trial proceedings in this cause to the press and public.
Pruett's original capital murder conviction was vacated in the federal courts, Pruett v. Thigpen, 665 F. Supp. 1254 (N.D. Miss. 1986), aff'd 805 F.2d 1032 (5th Cir.1986), cert. den. ___ U.S. ___, 107 S.Ct. 1964, 95 L.Ed.2d 535 (1987), Pruett is presently scheduled for retrial on a charge of capital murder in Hinds County on January 9, 1988.
This case has been attended by massive publicity and media coverage from the beginning involving as it does a charge of brutal kidnap/murder. See Pruett v. State, 431 So.2d 1101 (Miss. 1983). On September 2, 1987, the Circuit Court, on its own initiative, entered an order closing the file and docket of the Pruett cases to the public. Mississippi Publishers corporation, representing several newspapers, filed a petition to vacate the order. The petition was denied on September 17. Meanwhile, Defendant Pruett had moved that the press and public be excluded from all pretrial hearings and jury selection. After a hearing the Circuit Court on September 23, 1987, granted this motion and entered the closure order here under attack.
In support of its closure order, the circuit court has found as a matter of ultimate fact:
(a) that there is a substantial probability that the defendant Pruett's right to a fair trial will be prejudiced without enforcement of the closure order;
(b) that there are available no reasonable, less restrictive alternatives to closure that would adequately protect the defendant's right to a fair trial; indeed, the circuit court has in good faith attempted less restrictive alternatives without success. "This good faith attempt" was a July 1987 order which in all relevant parts was patterned upon an unpublished order entered in Mississippi Publishers v. Circuit Court of Panola County, which order is attached hereto.
(c) that there is a substantial probability that enforcement of the closure order will enhance de facto and de jure enjoyment of the constitutional rights defendant Pruett invokes.
The record reflects that the pre-trial proceedings ordered closed concern defense motions in limine and motions to suppress seeking to keep certain critical evidence from use by the prosecution at trial. Although we import no view of the merits of these motions, common sense makes clear the media coverage of those proceedings would render academic any success the defense might enjoy on those motions. In this setting, the circuit court made findings of evidentiary fact in support of its findings of ultimate fact, as follows:
(1) The press had repeatedly shown that, given the opportunity, it will publish details of the evidence, including evidence that could not be admitted at trial;
(2) If the press were allowed to attend suppression hearings, it would publish the details, thus making it difficult to find jurors who were not aware of any suppressed evidence.
The Circuit Court concluded that the press, if unrestrained, would jeopardize Pruett's right to a fair trial. It further found that expedients short of full closure would not be sufficient to protect Pruett's rights.
The petition asks us to compel vacation of the closure order. It is well settled that representatives of the news media have *1165 standing to contest court orders restricting public access to legal proceedings. E.g., Press-Enterprise Co. v. Superior Court, (Press Enterprise II), 478 U.S. ___, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1, 10 (1986); Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 609 n. 25, 102 S.Ct. 2613, 2621, n. 25, 73 L.Ed.2d 248, 259 (1982); Gannett Co. v. DePasquale, 443 U.S. 368, 401, 99 S.Ct. 2898, 2916, 61 L.Ed.2d 608, 634 (1979) (Powell, J., concurring).
The right to a fair trial and the right to a free press are found within a few paragraphs of one another in the federal Bill of Rights. U.S.Const.Amdts. I and VI. They likewise are secured by our state constitution. Miss. Const. Art. 3, §§ 13, 14 and 26 (1890). On occasion, however, they have not been entirely harmonious neighbors. The natural and praiseworthy desire of the press to inform the public about important criminal proceedings can result in the publication of matter that can deprive a defendant of his right to a fair trial. See Fisher v. State, 481 So.2d 203, 216-23 (Miss. 1985); Johnson v. State, 476 So.2d 1195 (Miss. 1985).
Frequently these rights may be accommodated by a change of venue. Here Pruett seeks no such move. In fact, he objects to it, and in this presents a claim of a third constitutional right  the right to be tried in Hinds County, the county where the offense was committed.
Questions of venue in criminal cases are not merely matters of formal legal procedure. They raise deep issues of public policy. The venue provisions of the United States Constitution are important safeguards designed to protect an accused from unfairness and hardship in defending against prosecution by the government. See Platt v. Minnesota Mining & Manufacturing Co., 376 U.S. 240, 245, 84 S.Ct. 769, 772, 11 L.Ed.2d 674 (1964); Travis v. United States, 364 U.S. 631, 634, 81 S.Ct. 358, 360, 5 L.Ed.2d 340 (1961); United States v. Cores, 356 U.S. 405, 407, 78 S.Ct. 875, 877, 2 L.Ed.2d 873 (1958); United States v. Johnson, 323 U.S. 273, 275-76, 65 S.Ct. 249, 250-51, 89 L.Ed. 236 (1944). "[A] provisions of the Bill of Rights which is `fundamental and essential to a fair trial' is made obligatory upon the states by the Fourteenth Amendment." Gideon v. Wainwright, 372 U.S. 335, 342, 83 S.Ct. 792, 795, 9 L.Ed.2d 799 (1963). Two Mississippi cases point to the significance of the defendant's right to trial in county where the offense was committed, based on the guarantee of the right in Miss. Const. Art. 3, § 26. State v. Caldwell, 492 So.2d 575 (Miss. 1986); Rice v. State, 192 So.2d 698 (Miss. 1966). Pruett thus has a federal and state constitutional right to be tried in Hinds County. See In re Brown, 478 So.2d 1033, 1036-37 (Miss. 1985).
The criminal processes should be open to public scrutiny. Exceptions can be made, but only for good cause. E.g., Press Enterprise Co. v. Superior Court (Press-Enterprise I), 464 U.S. 501, 505, 104 S.Ct. 819, 822, 78 L.Ed.2d 629, 635 (1984); Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 567, 100 S.Ct. 2814, 2822, 65 L.Ed.2d 973, 983 (1980). Openness in the criminal process is a value of importance in a pretrial setting as well. Press-Enterprise II, supra, 478 U.S. at ___, 106 S.Ct. at 2741, 92 L.Ed.2d at 11. A caveat: the right to a "public trial" belongs to the accused and no one else. U.S. Const. Amdts. VI and XIV, § 1; Miss. Const. Art. 3, § 26 (1890).
Press access to the trial and pretrial processes may be qualified. Press-Enterprise II, supra, 478 U.S. at ___, 106 S.Ct. at 2741, 92 L.Ed.2d at 10; Globe Newspaper, supra, 457 U.S. at 606, 102 S.Ct. at 2619, 73 L.Ed.2d at 257. The Supreme Court stated that appropriate test in Press-Enterprise I:
The presumption may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.
464 U.S. at 510, 104 S.Ct. at 824, 78 L.Ed.2d at 638.
In a pretrial setting, the corollary is that:
The preliminary hearing shall be closed only if specific findings are made demonstrating that first, there is a substantial probability that the defendant's right to *1166 a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's free trial rights.
Press-Enterprise II, 478 U.S. at ___, 106 S.Ct. at 2743, 92 L.Ed.2d at 13-14.
In the present case, the Circuit Court's closure order was obviously framed with the Press-Enterprise standard in mind. We are of the opinion that the record amply supports his finding that an unrestricted trial process would result in a substantial likelihood of Pruett being denied a fair trial. Pruett's case has already become one of the most famous in Mississippi history. It has been covered extensively by all segments of the media, and public interest has been correspondingly high. In the past, the Circuit Court has tried such less drastic expedients as limited gag orders and requests for voluntary press restraints. That Court has now found, and the record shows, that these measures have not sufficed to stem the torrent of publicity about Pruett.
The petitioners object that the order is not "narrowly tailored," in that it covers certain materials already within the public domain. We are tempted to ask them by whose efforts that condition came about. Be that as it may, the Circuit Court has indicated its willingness to entertain motions to exempt such materials from the scope of the closure order, and to open the court sua sponte as to any proceeding where the exclusion of the press is not necessary.
Petitioner's reliance on Capital Cities Media, Inc. v. Toole, 463 U.S. 1303, 102 S.Ct. 3524, 77 L.Ed.2d 1284 (1983), is misplaced. In that case, the Supreme Court struck down a closure order as not "narrowly tailored." But the order in Capital Cities was quite unlike the one before us. First, it was entered without a hearing. Second, it was a permanent order. The Circuit Court's order applies only to pre-trial matters; Pruett's trial is to be open. Third, the order in Capital Cities was not supported by findings of fact.
We emphasize that Petitioner is not being denied access to the pre-trial proceedings in perpetuity. The closure order expires once the jury is sequestered and the trial begins. Once that point is reached, Petitioner is to be granted access to a complete transcript of all closed, pre-trial proceedings. In this context and in the circumstances of this unique case, we regard the closure order as nothing more than a reasonable regulation of the time, place and manner of Petitioner's enjoyment of its First Amendment rights.
In sum, we are of the view
(1) that the Defendant, Marion Albert Pruett, has a right to a fair trial secured by the Sixth and Fourteenth Amendments to the Constitution of the United States and by Article III, §§ 14 and 26 of the Mississippi Constitution of 1890;
(2) that Defendant Pruett has a right to enjoy that fair trial in "the county where the offense was committed," a right secured by Article III, § 26 of the Mississippi Constitution of 1890; see also the Sixth and Fourteenth Amendments to the Constitution of the United States; and
(3) that "No right ranks higher than the right of the accused to a fair trial." Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629, 637 (1984);
In furtherance and protection of Pruett's aforesaid rights, the Circuit Court of the First Judicial District of Hinds County has on September 23, 1987, entered a closure order excluding the public (except the victim's family), print and electronic media from all pre-trial hearings and jury selection in this case.
The Circuit Court has made findings of ultimate fact legally adequate to undergird the closure order. Further, the Court has applied to those facts the correct legal criteria for decision. A consideration of the full tenor of the Circuit Court's bench opinion requires that we imply any findings of fact deemed necessary to support the closure order but which are not articulated with technical precision. See Watson v. Lillard, 493 So.2d 1277, 1279 (Miss. 1986); Kelly v. Shoemake, 460 So.2d 811, 817 (Miss. 1984); PMZ Oil Co. v. Lucroy, 449 So.2d 201, 205 (Miss. 1984); Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983).
*1167 Under established limitations upon our scope of review, this Court is without authority to vacate, disturb or ignore the findings of ultimate fact expressly and implicitly articulated by the Circuit Court. Spain v. Holland, 483 So.2d 318, 320 (Miss. 1986); Culbreath v. Johnson, 427 So.2d 705, 709 (Miss. 1983); see also Anderson v. City of Bessemer City, 470 U.S. 564, 573-75, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518, 528-29 (1985); Rogers v. Lodge, 458 U.S. 613, 622-23, 102 S.Ct. 3272, 3278, 73 L.Ed.2d 1012, 1021-22 (1982); Pullman-Standard v. Swint, 456 U.S. 273, 286-90, 102 S.Ct. 1781, 1789-91, 72 L.Ed.2d 66, 78-80 (1982). Substantial evidence in the record supports each finding of evidentiary or ultimate fact. None of those findings is clearly erroneous.
Petitioners have also advanced arguments based on the Mississippi Constitution and on state law grounds, but these need not detain us. It is urged that Miss.Const. § 26 (1890) enumerates the crimes for which closed trials may be conducted, and that murder is not one of them. That is true. It is also irrelevant, since the closure order does not propose to close Pruett's trial.
It is further alleged that the order violates the newspapers' right of access to public records under the First and Fourteenth Amendments, the Mississippi Public Records Act of 1983 (Miss. Code Ann. § 25-61-1, et seq. (Supp. 1987)) and the common law. The petitioners are simply wrong in their claim that the right of access to public records is of constitutional dimensions. It is a right derived from the common law and from applicable statutes. United States v. Edwards, 672 F.2d 1289, 1294 (7th Cir.1982); see also Belo Broadcasting v. Clark, 654 F.2d 423, 434 (5th Cir.1981). No one has rights under the Public Records Act which would deprive one criminally accused to his constitutionally created right to a fair trial.
Where common-law of statutory rights of the petitioner conflict with Pruett's Sixth Amendment rights, under the supremacy clause the former must yield. U.S. Const. Art. VI.
The record reflects that the Circuit Court did not take this step lightly; on the contrary, the Court admitted that it was "drastic". In fact, we know of no case in which so sweeping a closure has been properly imposed. But cases as sensational as this one are fortunately rare, and extreme remedies are sometimes necessary for extreme problems. We are convinced that the closure ordered by the Circuit Court (as modified by our order) is not an excessive measure under these circumstances.
The petition for writ of mandamus is therefore denied, and the closure order is modified and clarified in accordance with our separate order of this date, a copy of which is an Appendix to this opinion.
PETITION FOR WRIT OF MANDAMUS DENIED.
ROY NOBLE LEE and HAWKINS, P.JJ., PRATHER, ROBERTSON, SULLIVAN, GRIFFIN and ZUCCARO, JJ., concur.
ROBERTSON, PRATHER and SULLIVAN, JJ., specially concur.
DAN M. LEE, P.J., not participating.

ATTACHMENT I

In the Supreme Court of Mississippi

Mississippi Publishers Corporation and Hayes Johnson, Petitioners,

v.

Circuit Court of Panola County, Mississippi, Second Judicial District, Respondent.

Memphis Publishing Company, d/b/a The Commercial Appeal and Kevin Kittredge, Petitioners,

v.

The Hon. Andrew C. Baker, Judge of the Circuit Court for the Seventeenth Circuit Court District of the State of Mississippi, Circuit Court of Panola County, Second Judicial District, Respondent.

Misc. Nos. 1962, 1962-A.

ORDER
This cause came on to be heard by a panel of this Court on the Petition of Mississippi *1168 Publishers Corporation and Hayes Johnson for Writ of Prohibition or, in the Alternative Mandamus and the Petition of the Memphis Publishing Company d/b/a The Commerical Appeal and Kevin Kittredge for a Writ of Mandamus or other Extraordinary Relief. The Court, having considered the petitions, the responses, and briefs, and having heard argument of counsel for petitioners, respondent and intervenors Judy Lane Houston and District Attorney Robert L. Williams, and being fully advised in the premises, is of the opinion and so finds that:
1. Petitioners have standing and have demonstrated that they are entitled to relief by writ of prohibition or, in the alternative, mandamus, pursuant to Mississippi Supreme Court Rule 32 and Mississipi Code of 1972, § 9-1-19.
2. The "Order Prohibiting Pretrial Publicity" of June 14, 1985, entered by the Circuit Court of Panola County should be vacated except as to certain particulars.
IT IS, THEREFORE, ORDERED AND ADJUDGED that the June 14, 1985, order is vacated and the Circuit Court is prohibited from enforcing it except as to these particulars:
(a) The parties enjoined or restrained are limited to the defense counsel, prosecuting attorneys, law enforcement officials, clerks, deputy clerks, and all other court personnel.
(b) The parties enjoined shall not release or authorize release of any statements for dissemination by any means of public communication any matter concerning:
(i) the prior criminal record (including arrests, indictments, or other charges of crime), the character or reputation of the accused, or any opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case;
(ii) the existence of contents of statements given by the accused, or the refusal or failure of the accused to make any statement;
(iii) the performance of any examinations or tests, or the accused's refusal or failure to submit to an examination or test;
(iv) the identity, testimony or credibility of prospective witnesses;
(v) the possibility of a plea of guilty to the offense charged, or other disposition; and
(vi) information which the person knows or has reason to know would be inadmissible as evidence in a trial.
(c) Notwithstanding the foregoing, the Order is vacated as to all records regarding this case kept by the circuit clerk, except exhibits, confession, if any, or any matters now known or discoverable under Rule 4.06.
(d) This Order shall be in force and take effect as of 9:00 o'clock a.m.m on Thursday, October 3, 1985, except that counsel for respondent and intervenors will be given an opportunity to review the circuit court file and to place under seal only matters excepted by the preceding paragraph and will make all other matters in the file available for public inspection in the Panola County Circuit Clerk's office not later than 12:00 noon on Friday, October 4, 1985.
SO ORDERED, this the 3rd day of October, 1985.
 /s/ Neville Patterson,
 For the Court

ATTACHMENT II

In the Supreme Court of Mississippi

Mississippi Publishers Corporation

v.

The Honorable William F. Coleman, Judge of the Circuit Court of the Seventh Circuit Court District for the State of Mississippi, Circuit of Hinds County, First Judicial District.

No. DP-27.

ORDER
This cause came on to be heard on the Petition of Mississippi Publishers Corporation for Writ of Mandamus or Other Extraordinary Relief. The Court has considered the petition, the responses and the *1169 briefs, and has heard the argument of counsel for Petitioner and for the Defendant, Marion Albert Pruett, and is fully advised in the premises. In accordance with the opinion this day released, it is
ORDERED:
(a) That the Petition for Writ of Mandamus is denied and the closure order is affirmed, except as provided in subparagraph (b) below;
(b) the closure order is clarified and modified as follows:
(1) the closure order is subject to continuing review by the Circuit Court to the end that infringement or compromise of the rights secured to Petitioner by the First and Fourteenth Amendments to the Constitution of the United States and by Article III, Section 13 of the Mississippi Constitution of 1890 shall be kept to an absolute minimum;
(2) the closure order shall expire of its own force once the jury to be selected for Defendant Pruett's capital murder trial has been empaneled and sequestered. With respect to each filing made, proceeding had, or other action taken in the case prior to that time, the Circuit Court, upon motion of any party or other interested person, or upon its own motion and without request of any party or counsel shall review the closure order in light of the standards and criteria articulated in today's opinion and implicit in the Circuit Court's findings of ultimate fact. With respect to any such filings, proceedings, or other actions where closure is not substantialy justified under the aforesaid criteria, the closure order shall be relaxed;
(3) a full and complete transcript of all proceedings of any sort or nature whatsoever conducted under the closure order shall be kept and maintained and said transcript shall be made available to Petitioner upon its request once Defendant Pruett's trial has commenced and the jury has been empaneled and sequestered;
(4) petitioner will be kept advised of the date set for the trial of his case and, as well, of any continuances or postponements thereof.
ORDERED THIS THE 4 DAY OF NOVEMBER, 1987.
 FOR THE COURT,
 EN BANC
 /s/ Reuben V. Anderson
 REUBEN V. ANDERSON,
 Justice
ROBERTSON, Justice, concurring:
It is my best judgment that what the Court says today is legally appropriate. There is a lot of muddled reasoning afoot in fair trial/free press cases, typified by Petitioner's editorial response to the Circuit Court's closure order. That response was published in Petitioner's flagship newspaper, The Clarion-Ledger, the day after the closure order was entered and is attached hereto. Comment is in order.
When a party asserts a right, the lawyer's question is "whence that right?" Rights are thought a part of systems of ethics or morality, religious and secular. Rights are offered by the sciences of politics, economy and society. Unless attributable to a source empowered to confer legal validity, demands for judicial enforcement of a right do and should fall upon deaf ears.
Rights courts should honor are creations of law. They become obligatory upon us only when embedded in some primary rule brought into legal being by some law empowering act. Pruett's rights to a fair trial and to a fair trial in Hinds County are such rights. They emanate from primary rules of constitutional dimension enforceable because  and only because  those rules have been ratified. Cf. McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 403, 4 L.Ed. 579, 600 (1819).
The closure order was entered in furtherance of Pruett's rights and, indeed, at his request. Yet Petitioner's editorial cynically asserts that "Pruett's rights are even endangered" by that order. Pruett disagrees and that is that.
Petitioner's editorial asserts "the rights of the public." Whence such rights? The only rule Petitioner's lawyers have identified *1170 is the Open Records Act, which as all know yields in the event of conflict with the constitution. The public's right to know has no content in law beyond valid constitutional rules which must provide its source. U.S. Const.Amdt. I; Miss. Const. Art. 3, § 13 (1890). The public may be third party beneficiaries of rights conferred upon the press via the First Amendment. An informed citizenry may be the best justification for giving the press the right to be free. But nothing in the constitution validates per se any public right to know. But see Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580, 100 S.Ct. 2814, 65 L.Ed.2d 973, 991-92 (1980). To be sure, the rights of the press shine brightly in our firmament, and I have never hesitated to enforce those rights. See, e.g., Fulton v. Mississippi Publishers Corp. 498 So.2d 1215 (Miss. 1986); Ferguson v. Watkins, 448 So.2d 271 (Miss. 1984). Still, no one has identified any rule entailed with legal validity vesting rights in the press superior to the right of our most loathsome villain to a fair trial. There is no higher right. See Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629, 637 (1984).
The press is subject to no legal duty to be responsible, that is, outside our libel laws. Public hysteria does produce death sentences. See Fisher v. State, 481 So.2d 203 (Miss. 1985) (guilty verdict and death sentence in media saturated Lauderdale County; acquittal after change of venue and new trial in Rankin County); Johnson v. State, 476 So.2d 1195 (Miss. 1985) (death sentence in Lauderdale County; life sentence upon retrial in Jackson County). Whether the media is perceived to generate or merely fuel the flames, no sensible observer doubts the media's causal role. The media is made to pay no damages when its coverage causes a capital sentence. When the press violates an accused's right to a fair trial, we impose no sanctions upon it. We order venue changed, or, if that not be done, we reverse. See Fisher v. State, 481 So.2d 203, 214-23 (Miss. 1985). The press ought accept a measure of professional responsibility, a gratuitous quid pro quo[1] for its status as our only constitutionally protected commercial enterprise.
But change of venue is a remedy not here available. Pruett has a right to that right, notwithstanding it may cause inconvenience. In re Brown, 478 So.2d 1033, 1036 (Miss. 1985).
The day following entry of the closure order, Petitioner's editorialist stated:
During the hearings of the past few days [Circuit Judge William] Coleman has displayed a remarkable misunderstanding of his role and the role of the media in this matter. He has characterized media coverage of the Pruett trial as irresponsible because it recounts the history of the crime and court proceedings. In fact, it would be irresponsible for the media not to report on this crime and the judicial system's treatment of the accused.
See Appendix. Tough talk for one who pitches all news at an eighth grade level, who eschews in depth coverage because of its cynical assumption that the public doesn't want that, who would sacrifice us all on the altar of mediocrity and banality. Too much gray matter doesn't sell (ads), or so Petitioner assumes. And its sisters in the electronic media are more guilty, given their inherently greater powers of persuasion. They care not how complex a story is. It must be made simple. Twenty inch stories are reserved for declarations of war, and the same of five minute spots on the nightly news.
What has been irresponsible has been the media's refusal to cover  with calm and depth and insight and sensitivity  the real issues of this case: the problem of criminal violence in our society. Why does an individual do what Pruett is charged to have done? Are such actions the product of free will, or are they determined and, if they are determined, genetically or environmentally? What of the causal role of drugs? *1171 Are we even asking the right questions? Beyond that, what are the implications for policy of these questions and their elusive answers? For preventing or reducing the likelihood of recurrence of such seemingly senseless acts? For responding to actors? Public passion ought not compel unintelligence, nor should the press. When Pruett's trial begins and the closure order expires, we will watch with interest what the press prints.
Today we are concerned with a lone human being who just may have done some of the most damnable deeds one may imagine. The nature of Pruett's alleged crime(s) has made him the talk of the town. This threatens the most precious right known to our law, the right of one such as Pruett to a fair trial, as the prosecution seeks his death. Does not the press have a professional obligation of equal rank to respect and protect and secure that right as it would any other seen in danger. Vindication of that right is among the highest of American values. It is what distinguishes our society from others committed to more utilitarian and primitive values.
PRATHER and SULLIVAN, JJ., join this opinion. DAN M. LEE, P.J., not participating.

APPENDIX
12A The Clarion Ledger, Sept. 24, 1987.

Editorials

Closed court

Coleman blind to public rights
Last week the people of this country celebrated the 200th anniversary of the Constitution with thankful recognition of our rights and liberties.
But this week the celebration has turned to grave concern in Hinds County because the rights of the public are in danger of being trampled on in the Circuit Court of Judge William F. Coleman.
Coleman on Wednesday took one of the most drastic and dangerous steps an official in his position can take. He barred the public from attending the pretrial hearing and jury selection in a trial. The action was so drastic that the state Supreme Court moved to stay the order that same afternoon. Now, thankfully, a full review will be made of the issue before more damage is done.
The capital murder trial involves Marion Albert Pruett, who is accused of kidnapping and killing Peggy Lowe, a Jackson savings and loan official. It was a crime that shocked the community, and the case has been followed closely by the public as it has proceeded slowly and awkwardly through the legal system.
It's Pruett's second trial. The first one was thrown out by a U.S. District Court judge because Coleman allowed a juror to be seated who might have had opinions before the trial that Pruett was guilty.
It is understandable that Judge Coleman does not wish to be overturned again in the high-profile case. But his actions in slamming the doors shut to the public in an attempt to limit pretrial publicity are unwarranted and represent an assault on basic rights.
During the hearings of the past few days [Circuit Judge William] Coleman has displayed a remarkable misunderstanding of his role and the role of the media in this matter. He has characterized media coverage of the Pruett trial as irresponsible because it recounts the history of the crime and court proceedings. In fact, it would be irresponsible for the media not to report on this crime and the judicial system's treatment of the accused.
The confrontation, as Coleman sees it, is in Pruett's right to a fair trial versus the right of free public access to the courts. Not only are the public's rights discarded, but Pruett's rights are even endangered when his fate is decided behind closed doors. The judge naively suggested Wednesday that the family of Peggy Lowe, the only ones who will be admitted, could inform the public of any impropriety in the closed court.
There are remedies a judge can take if there is concern that the defendant cannot get a fair trial. The judge can "gag" officers *1172 of the court from talking to the media and even move the trial to another location. These are undesirable in themselves. But closing any portion of a trial is unconscionable.
Coleman's order at best was stopped temporarily by the higher court so the very serious issues could be examined further.
In the meantime, Coleman has reminded us of our constitutional freedoms in the reverse sense  by attempting to take them away.
NOTES
[1] This quid pro quo the press ought voluntarily give is not unlike that I would have lawyers give, see my The Lawyer As Hero, 53 Miss.L.J. 431, 437-69 (1983). As with lawyers, the source of that quid pro quo lies in exemptions claimed.