571 So.2d 941 (1990)
In re GANNETT RIVER STATES PUBLISHING CO.
v.
Ralph Hand, III.
No. 90-M-798.
Supreme Court of Mississippi.
November 28, 1990.
*942 Leonard D. Van Slyke, Jr., Terryl K. Rushing, Thomas Price Alston Jones & Davis, Jackson, for petitioner.
Mike C. Moore, Atty. Gen., Wayne Snuggs, Asst. Atty. Gen., Charlene R. Pierce, Sp. Asst. Atty. Gen., Jackson, William G. Willard, Jr., Holocomb Dunbar Connell Chaffin & Willard, Clarksdale, for respondent.
Before HAWKINS, P.J., and ANDERSON and BLASS, JJ.
ANDERSON, Justice, for the Court.
Petitioner, Gannett River States Publishing Co. (Gannett), pursuant to Miss.Sup. Ct.R. 21, seeks from this Court a writ of mandamus compelling Circuit Court Judge George Carlson to vacate a closure order entered in the case of State v. Ralph Hand, III, in the Circuit Court of Tallahatchie County. Hand is charged with capital murder.
We write today to address issues not specifically before us in our previous consideration of the conflict which sometimes arises between the constitutional right to a fair trial and the constitutional right to a free press in Mississippi Publishers Corp. v. Coleman, 515 So.2d 1163 (Miss. 1987). As we noted in that opinion, "The natural and praiseworthy desire of the press to inform the public about important criminal proceedings can result in the publication of matter that can deprive a defendant of his right to a fair trial." Id. at 1165.
Where a trial court makes an on-the-record determination that there is a substantial probability that a defendant's right to a fair trial will be prejudiced by publicity that closure will prevent, and where it is determined that there are no less restrictive alternatives to closure, all supported by substantial evidence, we have not hesitated to recognize that "[p]ress access to the trial and pretrial processess may be qualified." Mississippi Publishers Corp., 515 So.2d at 1165. Press-Enterprise Co. v. Superior Court, (Press-Enterprise II), 478 U.S. 1, 9, 106 S.Ct. 2735, 2741, 92 L.Ed.2d 1, 10 (1986). For we recognize that "[n]o right ranks higher than the right of the accused to a fair trial." Press-Enterprise Co. v. Superior Court, (Press-Enterprise I), 464 U.S. 501, 508, 104 S.Ct. 819, 823, 78 L.Ed.2d 629, 637 (1984). But we also recognize that "[t]he right to an open public trial is a shared right of the accused and the public, the common concern being the assurance of fairness." Press-Enterprise II, 478 U.S. at 7, 106 S.Ct. at 2739, 92 L.Ed.2d at 9. Conflict arises when the right of the accused to a fair trial might be undermined by publicity. "In such cases, the trial court must determine whether the situation is such that the rights of the accused override the qualified First Amendment right of access." Id. As an appellate court, we are often called upon to review that determination. We set forth procedures today to aid in balancing an accused's right to a fair trial and the press and public's right of access to criminal proceedings.

FACTS
At some point in the discovery process of Hand's case, on July 5, 1990, one of Hand's attorneys contacted Judge Carlson by telephone to request that the court review pleadings and motions that had been filed in the case to determine if some should be placed in a closed file pending a hearing on closure. This conversation was followed with a letter to Judge Carlson outlining the same request. On July 6, 1990, Judge Carlson contacted the Circuit Clerk's office in Sumner and instructed that motions be placed in a sealed file, not for public disclosure, pending entry of a formal closure order.
On July 24, 1990, a reporter for the Clarion-Ledger, Carole Lawes, visited the Circuit Clerk's office in Sumner in order to conduct a routine review of the Hand files, since Hand was scheduled to go to trial on August 20, 1990 (the trial date has since been continued). Comparing the docket entries with the motions and pleadings actually available in the file, she noted that 10 motions were missing from the file. She *943 asked a deputy circuit clerk if there were another file somewhere containing these 10 motions. Lawes was handed more files. She began looking through these files and noted that one file contained investigative reports. She gave this file back to the deputy clerk without looking further, saying that she did not think the press and public were supposed to look at these reports. As she handed the files back, she noticed that on the front of two of the files was the heading "Non-public." She had continued to look at the other "Non-public" file before noting that it was "Non-public." In that file were some of the 10 missing motions.
After leaving the clerk's office, Lawes tried to ascertain whether or not a closure order had been entered. She apparently never did ascertain this information; nevertheless, she wrote an article which appeared in the Clarion-Ledger on July 25, 1990, about one of the motions found in a "Non-public" file.
On July 26, 1990, Lawes and Gannett attorney Leonard Van Slyke, Jr. were subpoenaed by defendant to appear in Tallahatchie County Circuit Court on July 31, 1990, as witnesses. It was the desire of defense counsel, and apparently the court, to determine how Lawes obtained the information from the closed files to write her article. They were set to appear at 10:00 a.m., but upon arriving at 9:30 a.m., they walked into court just as Judge Carlson was issuing a closure order from the bench. Mr. Van Slyke sought to intervene on behalf of his client, Gannett, and requested a hearing on the closure motion; however, the court continued to enter the order on its own motion with no formal motion for closure having been filed by either Hand or the State, even though Hand's attorney had written the letter to Judge Carlson requesting that he consider closing some of the files. A written order followed. The judge allowed Mr. Van Slyke, as well as Hand's counsel and the District Attorney, Robert Williams, to make comments and arguments. Both Hand and the State agreed that the court's closure order was proper and made no objection. Mr. Van Slyke urged the court to reconsider the closure order, asking that a formal hearing on closure be held. The Judge denied the ore tenus motion to reconsider, but explained that Gannett could file a motion to vacate the closure order and he would hold a hearing on the motion as soon as possible, probably on August 13, 1990, then a week before trial was scheduled to begin.
Gannett filed an emergency motion in this Court to stay any further proceedings under the closure order pending consideration by this Court of Gannett's forthcoming petition for writ of mandamus. The emergency motion for stay was denied on July 31, 1990. Gannett subsequently proceeded into this Court with this Petition for Writ of Mandamus.

DISCUSSION
Gannett contends that the closure order entered by Judge Carlson is unconstitutional for the reason that no evidentiary basis exists for his finding that there is a substantial probability that Hand's fair-trial rights will be prejudiced which closure will prevent and that there are no less-restrictive alternatives to closure. Underlying the argument that no evidentiary basis exists for this finding is that no hearing on the closure issue was afforded before closure was initiated and before the closure order was entered. We agree with Gannett's contention that a closure order cannot be entered without public notice and a hearing.
Hand and the State both respond by noting that in Mississippi Publishers v. Coleman, 515 So.2d 1163 (Miss. 1987), Judge Coleman, on the court's own motion, entered the closure order and then entertained a motion to vacate by Mississippi Publishers, which was denied. Id. at 1164. However, as the Mississippi Publishers opinion continues, after the motion to vacate was denied, Pruett, the defendant, filed a motion that the press and public be excluded from the pretrial proceedings and jury selection. After a hearing on that motion, the closure order under attack in this Court was entered. Id. Therefore, the procedure the press urges in this petition *944 was actually followed, though belatedly, by Judge Coleman.
Earlier this year, this Court confronted a similar situation in State v. Carr and State v. Simon in Quitman County. In that instance, a preliminary hearing involving both Simon and Carr was closed by a Quitman County Justice Court, including the files and transcript of the preliminary hearing, without a public hearing. On March 14, 1990, this Court remanded the matter to the Quitman County Circuit Court for a hearing as to the appropriateness of closing the preliminary hearing, the transcript, and the files. In Re: Gannett River States Publishing Co. and Memphis Publishing Co., 90-M-267 (order entered March 21, 1990). In this situation, defendants and the State had moved for closure.
The closure order entered in the Hand case came about on the court's own motion, albeit prompted by a letter from Hand's attorney, without public notice and without a public hearing. While it is true that Gannett's attorney, Mr. Van Slyke, was present in court when the closure order was actually entered and was given the opportunity to argue against closure, his presence was fortuitous and not in response to notice of a hearing. The presumption of openness of the criminal process and the press and public's qualified First Amendment right of access to this process is not well served by such action except in the most unique and drastic of circumstances, such as that involved in our Mississippi Publishers decision. We explained, however, in Mississippi Publishers that the "criminal process should be open to public scrutiny. Exceptions can be made, but only for good cause [cites omitted]." 515 So.2d at 1165. Further, openness in the pre-trial setting is likewise of value and importance, and a preliminary hearing shall be closed only if specific findings are made demonstrating that there is a substantial probability that the defendant's right to a fair trial will be prejudiced by the publicity which closure would prevent and that reasonable alternatives to closure cannot adequately protect the defendant's free trial rights. Id., quoting from Press-Enterprise II, 478 U.S. 1, 14, 106 S.Ct. 2735, 2743, 92 L.Ed.2d 1, 13-14 (1986). Further, "[i]t is well settled that representatives of the news media have the standing to contest a court order restricting public access to legal proceedings. [cites omitted]." 515 So.2d at 1164.
The United States Supreme Court noted in Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 609, 102 S.Ct. 2613, 2621, 73 L.Ed.2d 248, 259 (1982), n. 25, that "for a case-by-case approach to closure to be meaningful, the press and public must be given an opportunity to be heard on the question of their exclusion." In U.S. v. Criden, 675 F.2d 550, 558 (3rd Cir.1982), the court discussed the importance of the interest affected by closure of pretrial criminal proceedings in these words:
The interests of the public will not necessarily be represented either by defendants or prosecutors. The defendant's interests will obviously not coincide with that of the press. The Government, quite properly, has the duty to ensure a fair trial and has an obvious interest in securing a conviction that will withstand appeal; reversal of a conviction because of prejudicial publicity, though perhaps rare, poses a risk to a successful prosecution. We therefore cannot expect the Government to vindicate the public's first amendment rights. Nor should the trial judge be placed "in the position of sole guardian of first amendment interests even against the express wishes of both parties." Younger, The Sheppard Mandate Today: A Trial Judge's Perspective, 56 Neb.L.Rev. 1, 6-7 (1977). We believe that due process requires some notice to the public before a trial court may close a pretrial criminal proceeding. [cite omitted]
We note that other states, when faced with these circumstances, have set forth procedures for insuring that the press and public have an opportunity to be heard on closure motions. See, e.g. Minot Daily News v. Holum, 380 N.W.2d 347 (N.D. 1986); State v. Drake, 701 S.W.2d 604 (Tenn. 1985); R.W. Page Corp. v. Lumpkin, 249 Ga. 576, 292 S.E.2d 815 (1982).
*945 Because of the frequency with which closure orders have been entered in the trial courts of our State, we find it is time that this Court issue some procedural guidelines as to how closure motions should be handled in the trial courts in order to protect the First Amendment rights of the press and public, qualified though they be in the face of an overriding interest such as fair-trial rights of a defendant. Beginning with the principle that the press and public are entitled to notice and a hearing before a closure order is entered, we hold that any submission in a trial court for closure, either by a party or on the court's own motion, and be it a letter, written motion, or oral motion either in chambers or open court, must be docketed, as notice to the press and public, in the court clerk's office for at least 24 hours before any hearing on such submission, with the usual notice to all parties. This requirement should not be taken to mean that a greater notice period may not be afforded where feasible. Preferably the submission should be a written motion if time and circumstances allow.
A hearing must be held in which the press is allowed to intervene on behalf of the public and present argument, if any, against closure. The movant must be required to "advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceedings, and it must make findings adequate to support the closure." Waller v. Georgia, 467 U.S. 39, 48, 104 S.Ct. 2210, 2216, 81 L.Ed.2d 31, 39 (1984). In considering the less restrictive alternatives to closure, the court must articulate the alternatives considered and why they were rejected. Then the court must make written findings of fact and conclusions of law "specific enough that a reviewing court can determine whether the closure order was properly entered." Press-Enterprise I, 464 U.S. 501, 510, 104 S.Ct. 819, 824, 78 L.Ed.2d 629, 638 (1984). A transcript of the closure hearing should be made public and if a petition for extraordinary relief concerning a closure order is filed in this Court, it should be accompanied by the transcript, the court's findings of fact and conclusions of law, and the evidence adduced at the hearing upon which the judge bases the findings and conclusions. These requirements cannot be avoided by an agreement between the defendant and State that proceedings and files should be closed.
Turning briefly to the closure order entered in this case, the party seeking closure, presumably Hand, was not required to, nor did he, present proof that his overriding interest in a fair trial was likely to be prejudiced by publicity that closure would prevent. Therefore, the court's finding of a substantial likelihood that Hand's fair-trial rights would be prejudiced without closure has no evidentiary support, and even though the court considered alternatives to closure and rejected them, there is no evidence to support the rejections since there was no evidence presented to support a claim that Hand's overriding interest was likely to be prejudiced in the first place. All that was in evidence was the July 25 article published by the Clarion-Ledger. This Court has nothing else to review by way of an evidentiary basis for the court's findings and there is no way to tell if the order is narrowly drawn to protect an overriding interest.
THE PETITION FOR WRIT OF MANDAMUS IS GRANTED, THE CLOSURE ORDER IS VACATED, AND THE MATTER IS RETURNED TO THE CIRCUIT COURT OF TALLAHATCHIE COUNTY, SECOND JUDICIAL DISTRICT, FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and BLASS, JJ., concur.