# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-KA-00334-SCT

*THOMAS DAVID BAILEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/22/1997 |
| TRIAL JUDGE: | HON. JOHN H. WHITFIELD |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | NICHOLAS McLEOD HAAS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  PAT S. FLYNN |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 1/14/99 |
| MOTION FOR REHEARING FILED: | 1/27/99 |
| MANDATE ISSUED: | 4/1/99 |

**BEFORE PITTMAN, P.J., SMITH AND MILLS, JJ.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Thomas David Bailey ("Bailey") was indicted for three counts of felony child abuse by the Grand Jury of the Circuit Court of Hancock County on May 12, 1997. The State proceeded to trial on Count I only which stated that:

> Thomas David Bailey in Hancock County, Mississippi, on or about October 10, 1996, did willfully, unlawfully, feloniously and intentionally, torture Korey Jarrach, a child the age of four years at the time in question, by using his fingers, hands and/or a wooden spoon to strike, pull and beat the body, more particularly the penis of said Korey Jarrach...

The jury returned a verdict of not guilty of felony child abuse, but guilty of the lesser included offense, misdemeanor child abuse. Bailey was subsequently sentenced to serve a term of one (1) year in the custody of the Sheriff of Hancock County and was fined $1000.

¶2. From the denial of his Motion for JNOV or new trial, Bailey appeals his conviction and sentence and

assigns as error the following for this Court's review:

**I. THE TRIAL COURT ERRED BY FAILING TO VOIR DIRE FIVE-YEAR OLD KOREY JARRACK TO DETERMINE COMPETENCY.**

**II. THE TRIAL COURT ERRED BY EXCLUDING THE PUBLIC FROM THE COURTROOM FOR THE TESTIMONY OF KOREY JARRACK.**

**III. THE TRIAL COURT ERRED BY ALLOWING THE INTRODUCTION OF INADMISSIBLE HEARSAY EVIDENCE.**

**IV. THE TRIAL COURT ERRED BY FAILING TO GRANT DEFENDANT'S MOTION TO DISMISS, MOTIONS FOR DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.**

**V. THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

## STATEMENT OF THE FACTS

¶3. On October 10, 1996 Renette Hill left her two children, Korey and Justin, with their regular babysitter, Emelda Miles, whom the children referred to as "Miss Sissy". Hill then went to the Hancock Medical Center for outpatient surgery. At the request of Hill, Miles dropped the children off at Bailey's home around 6:00 p.m. where they were to spend the night. According to Hill, she and Bailey were friends and her children had stayed with Bailey and his son, Matt on two or three occasions.

¶4. The next morning, Hill arrived to pick the children up around 7:00 a.m. Bailey told Hill that Korey had a bruise on his cheek from falling in the bathtub the night before. Hill then drove the children to school.

¶5. The regular babysitter, Miles, picked Korey and Justin up from school around 2:30 p.m. Korey was unhappy when he was picked up and was complaining that he did not want to go to school anymore. Korey told Miles that someone had pulled on his "weenie" and that it was hurting. Miles assured Korey that she would look at it when they got home. Upon arrival at Miles' home, Miles pulled Korey's pants down to see what was wrong with him. According to Miles, Korey was in pain and was "hollering because he couldn't stand for the pants or anything, you know, to touch him". Miles and her husband noticed that Korey's penis was bruised and swollen.

¶6. Miles then telephoned Hill at work and asked her if she should take Korey to the hospital. Hill inquired as to whether it could wait until she got home from work. Miles told Hill that she would call her back. Miles' husband did not think that they should wait to take Korey to the hospital, so Miles, her husband, Korey and Justin headed to the hospital. Once Hill arrived at the hospital, the Mileses left.

¶7. Korey, five years old at the time of trial, testified after the trial court excluded the public from the courtroom. Korey stated that he took a bath at Bailey's home on the night of October 10th. He fell getting out of the bathtub and hurt his cheek and back. Korey testified that later that night he wet his pants, and that Bailey whipped him with a wooden spoon on his "weenie" and underneath his "weenie" on his "nuts". Korey stated that he learned the word "nuts" from Bailey. Korey also testified that on that same night, Bailey hung him on a hook in the living room and put him in the clothes dryer. Korey stated that October 10th was the

only time that he had stayed at Bailey's home.

¶8. Justin, Korey's seven year old brother, also testified at trial. He remembered going to Bailey's home on October 10th. Justin testified that he also received a spanking from Bailey that night with a wooden spoon. Justin did not see Korey get a spanking, but he heard Korey screaming, "Ouch" approximately five times. Justin did not remember Bailey hanging Korey on a hook or putting him in the dryer on October 10th.

¶9. Dr. Carolyn Gerald was the emergency room physician who examined Korey on October 11th. She testified that when Korey came in to the hospital he was crying and very upset. She discovered bruising on his face, buttocks, inner thighs, penis and other genitalia. Dr. Gerald testified that the injuries would have been painful, and that they had probably occurred within the last 12 to 24 hours. At first Korey explained that he had fallen in the bathtub, but Dr. Gerald did not think the bruises were consistent with that type of fall. Korey then told Dr. Gerald that Bailey had hit him with a wooden spoon. Dr. Gerald stated that Korey's injuries were consistent with being struck by a wooden spoon. Dr. Gerald was worried that Korey might get an infection and prescribed an antibiotic to prevent one.

¶10. Bailey testified in his own defense. He confirmed that on October 10th, Miles dropped Korey and Justin off at his home around 6:00 p.m. Korey, Justin, and Bailey's son, Matt, had a snack between 7:00 and 7:30, and then Bailey told them to take their baths. Korey took his bath first. As Bailey made his way back to his son's bedroom to check on Justin and Matt, he saw that Korey was starting to get out of the bathtub. He saw Korey put his foot on the ledge, and advised Korey to be careful not to slip. At about that same time, Korey slipped, fell and screamed. Bailey got Korey out of the bathtub, dried him off, took him to the kitchen and put some ice on his eyes. Bailey noticed a bruise on Korey's cheek, but did not notice any other bruising. Bailey testified that he did not specifically look at Korey's pubic area or buttocks to determine if there was any other bruising.

¶11. Later that night, Korey and Matt were lying on a blanket in the living room watching television when they fell asleep. On cross-examination, Bailey testified that Korey wet his pants twice that night. Bailey denied spanking Korey with the wooden spoon on October 10th, although he admitted that he had done so once before. Bailey testified that he uses the wooden spoon "as a form of discipline as a school would use a paddle or a parent would use a belt or any other thing..." Bailey also denied that he hung Korey on a hook or placed him in the clothes dryer.

¶12. The defense presented two character witnesses on Bailey's behalf and then rested. The State then finally rested.

¶13. The jury returned a verdict of not guilty of felony child abuse, but guilty of the lesser included offense of misdemeanor child abuse. Thereafter, Bailey was sentenced to serve a term of one (1) year in the custody of the Sheriff of Hancock County and fined $1000.

## DISCUSSION OF LAW

### I. THE TRIAL COURT ERRED BY FAILING TO VOIR DIRE FIVE-YEAR OLD KOREY JARRACK TO DETERMINE COMPETENCY.

¶14. Bailey contends that the trial court erred by refusing to voir dire Korey on his competency before allowing him to testify. The defense objected before Korey testified and asked the court to "qualify this

witness to whether he knows what the truth is". The trial court overruled the objection citing Rule 601 of the Mississippi Rules of Evidence, which provides that every person is competent to be a witness unless the person falls within one of the exceptions to the rule, which in this case do not apply. Miss. R. Evid. 601.

¶15. Bailey's primary contention is that Korey's testimony was at times inconsistent with Hill's and Justin's. He also asserts that Korey had trouble remembering events as well as difficulty understanding and answering questions intelligently.

¶16. Bailey, citing **Bandy v. State,** 495 So. 2d 486, 492 (Miss. 1986), argues that where the testimony of a child of tender years is offered as evidence in a trial, the child must first be examined by the trial judge to show that the child has a comprehension of past events and a moral appreciation of the truth.

¶17. The State asserts that the rule in **Bandy** was the rule prior to the adoption of the Mississippi Rules of Evidence in January, 1986 and that under Rule 601 no such showing was required. It cites **Ryan v. State,** 525 So. 2d 799 ( Miss. 1988) to support its position. In **Ryan,** the appellant argued that the trial court had erred in allowing a six year old to testify. This Court held that:

> Under the new Mississippi Rules of Evidence, Rule 601, involving the competency of witnesses, reads as follows, "Every person is competent to be a witness except as restricted by Miss. Code § 13-1-5 (competency of spouses) and § 13-1-11 (persons convicted of perjury or [subornation] of perjury), or by these rules." With this rule and code section in mind, the trial court conducted a pre-trial competency hearing for Alicia.

> Noting the trial court's **pre-rule procedure** in examining the child, the trial court made a finding supported by the record that the child had the capacity to understand the questions, frame intelligent answers, and had a moral responsibility and consciousness to speak the truth.

> In addition to the persuasive testimony of Alicia, this Court holds that this argument is settled by the wording of Mississippi Rule of Evidence 601...

**Ryan,** 525 So. 2d at 801 (emphasis added).

¶18. Bailey cites this Court's decision in **Brent v. State,** 632 So. 2d 936 (Miss. 1994) for the proposition that "'[b]efore allowing a child witness to testify, the trial judge should determine 'that the child has ability to perceive and remember events, to understand and answer questions intelligently and to comprehend and accept the importance of truthfulness.'" **Brent,** 632 So. 2d at 942 (quoting **Mohr v. State,** 584 So. 2d 426, 431 (Miss. 1991) (citing **House v. State,** 445 So. 2d 815, 827 (Miss. 1984))).

¶19. The State asserts that the determination required in **Brent** does not require a separate *voir dire.* In the case *sub judice,* although the trial judge did not separately *voir dire* Korey, Korey was asked several preliminary questions by the State which we find sufficient for the trial court to conclude that Korey was a competent witness under the **Brent** standard. Korey testified in part as follows:

Q: ...All you have to do is tell the truth. Can you do that?

A: (No response.)

Q: Korey?

A: What?

Q: Can you tell the truth?

A: Uh-huh (affirmative).

Q: You will? Let me ask you this.

...

Q: Come on, buddy. If I told you that it was cold and rainy outside, would that be a lie or would that be the truth?

A: A lie.

Q: A lie? And why is that?

A: Because it's not.

Q: Okay. What's it like outside?

A: Huh?

Q: What's it like outside? Is it cold and rainy?

A: Huh-uh (negative).

Q: What is it?

A: It's sunny.

Q: Sunny. And what kind of pants are you wearing?

A: Jeans.

Q: Jeans? Are they long or short?

A: Short.

...

¶20. We hold that the trial court did not err in refusing to separately voir dire Korey as to his competency prior to his testimony. Under Miss. R. Evid. 601, Korey was a competent witness. Furthermore, although the trial judge in *Brent* did conduct *voir dire* of the young witness before she testified, *Brent* does not explicitly require a separate *voir dire* to make the competency determination. Korey was preliminarily asked questions by the State which did not concern substantive matters and by which the trial judge could determine that the *Brent* standard had been met. The competency of a witness is to be determined by the trial court, in its discretion. *Bowen v. State,* 607 So. 2d 1159, 1160 (Miss. 1992). This issue is meritless.

## II. THE TRIAL COURT ERRED BY EXCLUDING THE PUBLIC FROM THE COURTROOM FOR THE TESTIMONY OF KOREY JARRACK.

¶21. Prior to empaneling the jury and again before Korey's testimony, the trial court ruled that he would close the courtroom to spectators. The trial court cleared the courtroom of everyone except the parties, attorneys, deputies, and jurors. Bailey objected, albeit generally.

¶22. Bailey now argues that his federal and state constitutional rights to a public trial have been violated. The Mississippi Constitution, Article 3, Section 26 provides in part, that:

> In all criminal prosecutions the accused shall have a right to be heard by himself or counsel, or both, to demand the nature and cause of the accusation, to be confronted by the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in all prosecutions by indictment or information, a speedy and public trial by an impartial jury of the county where the offense was committed; and he shall not be compelled to give evidence against himself; but in prosecutions for rape, adultery, fornication, sodomy or crime against nature the court may, in its discretion, exclude from the courtroom all persons except such as are necessary in the conduct of the trial...

Miss. Const. art. 3, § 26.

¶23. The Sixth Amendment to the United States Constitution provides that:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const. amend. VI.

¶24. Generally, a defendant has a constitutional right to a public trial. However, that right is not absolute, but instead must be balanced against other interests essential to the administration of justice. *Waller v. Georgia,* 467 U.S. 39, 45 (1984). The Mississippi Constitution explicitly authorizes the exclusion of the public in certain instances. The United States Constitution does not, but Federal Courts have recognized certain instances in which exclusion is appropriate. Any exclusion of the public must satisfy both the Mississippi Constitution and the United States Constitution.

¶25. This Court examined a defendant's right to a public trial in *Lee v. State,* 529 So. 2d 181 (Miss. 1988). In contrast to the case *sub judice, Lee* was a rape case in which the public was excluded for the victim's testimony. The trial court also articulated specific reasons for the exclusion of the public. In affirming the lower court's decision, this Court recognized that the Mississippi Constitution expressly provides for exclusion in rape cases, but held that the exclusion must not violate the Sixth Amendment to the United States Constitution. *Lee,* 529 So. 2d at 182-83. The Court cited numerous federal court decisions in which federal courts had upheld public exclusion "to the extent necessary to avoid embarrassment or emotional disturbance to a witness which might result from that witness giving testimony in a particular case." *Id.* at 183. This Court concluded that the trial judge in *Lee* had made findings sufficient to exclude the public and to satisfy the requirements of the Sixth Amendment. *Id.*

¶26. In the case at hand, the trial judge made the following comments concerning excluding the public for Korey's testimony:

THE COURT: Okay. Just for those people who are in the audience, once the minor child who is alleged to be the victim in this case is called as a witness, I'm sure the State is going to make a motion for me to basically close the courtroom.

MR. BOURGEOIS: Yes, sir.

THE COURT: This is the one exception under the open policy that we have in having open proceedings in the courtroom, and I will ask you-all to leave the courtroom at that time, other than the deputies and the necessary parties, the defendant, and the attorneys. Mr. Haas, are you going to have an objection to that?

MR. HASS: Yes, Your Honor. We do invoke the rule. I don't know if anybody has done it or not.

THE COURT: No.

MR. HASS: But we would object to that, Your Honor.

THE COURT: Okay. Noting that objection, I just want everybody to know what my decision is going to be. That's the decision I have made in every case involving a sexual claim against a minor...

¶27. Bailey cites this Court's decision in *Mississippi Publishers Corp. v. Coleman,* 515 So. 2d 1163 (Miss. 1987) to support his argument that crimes not expressly enumerated in Article 3, Section 26 cannot serve as the basis for exclusion of the public. *Coleman* involved a murder trial in which the trial court excluded the press and the public from pre-trial proceedings. Mississippi Publishers argued that murder was not included in the list of crimes for which the trial could be closed. This Court said in dictum that, "[t]hat is true. It is also irrelevant, since the closure order does not propose to close Pruett's trial." *Coleman,* 515 So. 2d at 1167.

¶28. In the case *sub judice,* Bailey argues that felony child abuse is not specifically listed as a crime for which exclusion of the public is allowed. Furthermore, because the trial court gave no specific reasons for the exclusion, Bailey argues that his right to a public trial has been violated. As in *Coleman,* however, the trial court did not close Bailey's entire trial.

¶29. In *Waller v. Georgia,* 467 U.S. 39 (1984), the United States Supreme Court established a test for determining whether a defendant's right to a public trial is outweighed by other considerations. The Court held that:

Under *Press-Enterprise*, the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

*Waller,* 467 U.S. at 48. This Court adopted the *Waller* test in *Gannett River States Publishing Co. v. Hand,* 571 So. 2d 941 (Miss. 1990).

¶30. Bailey argues that because the trial court made no real record in this case, no legitimate analysis can be made as to the *Waller* factors. Bailey seeks a reversal of his conviction and sentence.

¶31. The State asserts that although the trial court did not consider the *Waller* factors on the record, the

record does in fact support the trial court's ruling. In other words, the State argues that an on the record determination of the factors would have led to the same result. The State points out that Korey was five years old at the time of trial, and that although this was not a sexual abuse case, the sexual connotations which might cause embarrassment and fear were certainly present.

¶32. We find the State's argument persuasive. As we recognized in *Lee, supra,* public exclusion may be appropriate "to the extent necessary to avoid embarrassment or emotional disturbance to a witness which might result from that witness giving testimony in a particular case." *Lee,* 529 So. 2d at 183. It certainly was appropriate in this case which although not a sexual abuse case did require a five-year old to testify to potentially embarrassing facts. Although the trial judge should have provided a more extensive record of his reasoning for the closure, we affirm his decision and find his ruling to be barely sufficient.

### III. THE TRIAL COURT ERRED BY ALLOWING THE INTRODUCTION OF INADMISSIBLE HEARSAY EVIDENCE.

¶33. At trial, the court held a hearing outside of the presence of the jury on the issue of whether Dr. Carolyn Gerald would be allowed to testify that Korey told her Bailey hit him with a wooden spoon. The trial court ruled that Dr. Gerald could testify as to Korey's statement citing Miss. R. Evid. 803(4), an exception to the hearsay rule.

¶34. Bailey argues that Dr. Gerald's testimony concerning Korey's identification of Bailey as his perpetrator was inadmissible hearsay which was used to bolster Korey's testimony.

¶35. Miss. R. Evid. 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Miss. R. Evid. 803(4) provides that:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

**(4) Statements for Purposes of Medical Diagnosis or Treatment.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. For purposes of this rule, the term "medical" refers to emotional and mental health as well as physical health.

¶36. This Court most recently examined this issue in *Hennington v. State,* 702 So. 2d 403 (Miss. 1997). In *Hennington,* which was a sexual battery case, the Court reaffirmed its holding in *Eakes v. State,* 665 So. 2d 852 (Miss. 1995) and said that:

Today, the Court firmly states its position as a reaffirmation of the holding in *Eakes.* Therefore, we hold that hearsay testimony identifying the perpetrator is admissible under Miss. R. Evid. 803(4) regardless of whether he or she is a member of the child's immediate household. The overriding question making the inquiry necessary is, "Will the perpetrator have access to the child in the future that would allow the sexual abuse to continue?" Because the inquiry is necessary for treatment, the

answer is admissible under the Rule.

*Hennington,* 702 So. 2d at 415.

¶37. Bailey argues first that the present case is not the type of case for which this Court has extended the 803(4) hearsay exception because it is not a sexual abuse case. The State responds that "[i]f the doctor needs to know the identification of the child abuse perpetrator in order to protect the child from further injury, it makes no difference whether the injuries are of a sexual or physical nature." The State asserts that there is no logical reason why 803(4) should not be applicable to physical abuse cases. As the State correctly points out, the issue is not the nature of the injuries received but the reliability of the statement made.

¶38. Bailey argues alternatively that he was not in the category of people to whom the exception has been applied because he was only an infrequent babysitter. The State contends that this question was squarely answered in *Eakes, supra*, where the Court stated that:

> In *Doe*, this Court expanded *Jones, supra,* to allow a finding that the identity of the child's sexual abuser was pertinent to treatment, therefore reasonably relied upon by the treating physician, although the perpetrator was not a member of the child's household. Since the alleged perpetrator in *Doe* was the child's father, whose visitation rights were at issue, this Court reasoned that prevention of further abuse was an immediate concern. *Doe,* 644 So. 2d at 1206. It follows that prevention of further abuse will always be an immediate concern, whether the perpetrator has daily, weekly, or only sporadic opportunity to abuse a child.

> There is no logical reason to find that a statement identifying the perpetrator is sufficiently pertinent to treatment and reliable if the perpetrator is someone who has regularly scheduled contact with the child but not if the perpetrator is, instead, a family friend, an acquaintance, or a stranger.

*Eakes,* 665 So. 2d at 867.

¶39. Although this Court has not previously applied Miss R. Evid. 803(4) to a physical abuse case, it seems a logical extension to do so now. Furthermore, under *Eakes,* it is irrelevant that Bailey was only an occasional babysitter. Korey's statement to Dr. Gerald was admissible as an exception to the hearsay rule.

> ### IV. THE TRIAL COURT ERRED BY FAILING TO GRANT DEFENDANT'S MOTION TO DISMISS, MOTIONS FOR DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.

> ### V. THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶40. Bailey argues that the trial court erred in not granting his motion to dismiss, motion for directed verdict or his motion for J.N.O.V. A motion for directed verdict challenges the legal sufficiency of the evidence offered to that point of the trial to sustain a guilty verdict. Following the denial of his motion for a directed verdict, Bailey offered evidence in his own defense. As a result, Bailey has waived his challenge to the sufficiency of the State's evidence up to that point in time. *Stringer v. State,* 557 So. 2d 796, 797 (Miss. 1990)(citations omitted).

¶41. However, as this Court stated in ***Stringer,*** Bailey "'...has [not] waived his right to challenge the weight or sufficiency of the evidence to sustain the judgment against him.'" ***Stringer v. State,*** 557 So. 2d at 797 (quoting ***Clements v. Young,*** 481 So. 2d 263, 268 (Miss. 1985)). Therefore, this Court considers all of the evidence offered in determining its sufficiency.

> When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence -- not just that supporting the case for the prosecution-- in the light most consistent with the verdict. We give [the] prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.

***McFee v. State,*** 511 So. 2d 130, 133-34 (Miss. 1987)(citing ***Gavin v. State,*** 473 So. 2d 952, 956 (Miss. 1985); ***May v. State,*** 460 So. 2d 778, 781 (Miss. 1984)).

¶42. Bailey's contention is that the State's evidence was insufficient to convict him of felony child abuse and because the trial court did not grant his motion for directed verdict, he was placed in the position of having to request a lesser-included offense instruction. As was stated before, Bailey waived his right to contest the trial court's ruling on his motion for directed verdict and can now only contest the jury's verdict against him. The jury concluded that Bailey was guilty of the lesser included offense of misdemeanor child abuse. Bailey does not, in his brief, argue that the evidence was legally insufficient to convict him of misdemeanor child abuse.

¶43. He does, however, argue that the verdict was against the overwhelming weight of the evidence, which is essentially an argument that the trial court should have granted his motion for a new trial.

¶44. A motion for a new trial is discretionary with the trial judge and this Court will not order a new trial unless it is convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. ***McNeal v. State,*** 617 So. 2d 999, 1009 (Miss. 1993); ***Burrell v. State,*** 613 So. 2d 1186, 1191 (Miss. 1993); ***Pierre v. State,*** 607 So. 2d 43, 54 (Miss. 1992). In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the trial court abused its discretion in failing to grant a new trial. ***Nicolaou v. State,*** 612 So. 2d 1080, 1083 (Miss. 1992). Any factual disputes are properly resolved by the jury and do not mandate a new trial. ***McNeal,*** 617 So. 2d at 1009.

¶45. Bailey primarily argues that Korey's testimony was insufficient for a conviction. The jury is the judge of the weight and credibility of each witness's testimony and is free to accept or reject it. Accepting all evidence as true that supports the verdict in this case, we hold that the verdict of the jury was not against the overwhelming weight of the evidence, and the trial court did not err in refusing to grant a new trial.

### <u>CONCLUSION</u>

¶46. The trial court committed no reversible error in this case, and therefore the jury verdict is affirmed.

¶47. **CONVICTION OF MISDEMEANOR CHILD ABUSE AND SENTENCE OF ONE (1) YEAR IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF FINE OF $1000.00 AFFIRMED.**

**PRATHER, C. J., SULLIVAN, P. J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**