786 So.2d 426 (2001)
Jerry Allen BOSARGE, Sr., Appellant
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01471-COA.
Court of Appeals of Mississippi.
June 5, 2001.
*429 Robert Charles Stewart, Gulfport, for Appellant.
Office of the Attorney General by Scott Stuart, for Appellee.
Before KING, P.J., PAYNE, and IRVING, JJ.
IRVING, J., for the Court:
¶ 1. This appeal arises from the Circuit Court of Harrison County. A Harrison County jury convicted Jerry Allen Bosarge, Sr. of three counts of touching a child under the age of fourteen for lustful purposes. The court sentenced Jerry Allen Bosarge, Sr., to serve terms of fifteen years on counts I and II to run concurrently *430 and five years on count III to run consecutively, for a total of twenty years in the Mississippi Department of Corrections. Bosarge, through his court-appointed counsel, has appealed, raising the following two issues: (1) the court abused its discretion in determining that the alleged victim, a child under the age of fourteen, was competent, and (2) the evidence was insufficient to support the verdict of guilty. Bosarge, with permission from the court, filed a pro se supplemental brief asserting these additional issues: (3) appellant suffered ineffective assistance of counsel by counsel not investigating, (4) appellant suffered ineffective assistance of counsel by counsel not calling witnesses, (5) appellant suffered ineffective assistance of counsel by counsel not pursuing a speedy trial claim, (6) appellant suffered ineffective assistance of counsel by counsel not having experience in criminal trials, (7) the court erred by allowing hearsay testimony, (8) the court erred by allowing witnesses to give an opinion that prosecutrix was telling the truth, (9) the prosecutor erred by not correcting testimony she knew was false, (10) the prosecutor erred in closing argument by giving her opinion about the truthfulness of prosecutrix, (11) the prosecutor erred in rebuttal argument by commenting on appellant's failure to testify and by giving additional grounds to find appellant guilty, and (12) the court erred by giving three sentences for one crime.
¶ 2. Finding no reversible error, we affirm.

FACTS
¶ 3. From July through September of 1997, Bosarge was involved in a relationship with the child's maternal grandmother. During this period, Bosarge spent a considerable amount of time at the grandmother's residence. During the same period, the child, six years of age at the time, was residing at the grandmother's residence. On September 29, 1997, the Gulfport Police Department was summoned to the grandmother's residence. There, they arrested Bosarge for unlawfully touching the six year old child. In June 1998, Bosarge was indicted by the grand jury for: Count I, unlawfully touching or rubbing the vagina of the child with his hands; Count II, unlawfully touching or rubbing the vagina of the child with his mouth, and Count III, unlawfully touching or rubbing the vagina of the child with his penis.

ANALYSIS OF ISSUES PRESENTED

I. Competence of the Child
¶ 4. Bosarge asserts that the trial court abused its discretion in determining that the victim, a child under the age of fourteen, was competent to testify. The child was eight years of age at the time of trial but, as stated, was only six years of age when the incident occurred. Bosarge argues that the child was not competent to testify because she "did not know why she had come to court" and because she did not know the difference between a lie and the truth.
¶ 5. The determination of whether a child witness of tender years is competent to testify is a matter primarily left to the discretion of the trial judge. Jethrow v. Jethrow, 571 So.2d 270, 272 (Miss. 1990) (citing Wilson v. State, 221 So.2d 100, 102 (Miss.1969)). However, before the judge allows a child of tender years to testify, the judge should determine that the child witness (1) has the ability to perceive and remember events, (2) understand and answer questions intelligently, and (3) comprehend and accept the importance of truthfulness. Bowen v. State, 607 So.2d 1159, 1160-61 (Miss.1992)(quoting House v. State, 445 So.2d 815, 827 (Miss. 1984)).
*431 ¶ 6. In the case sub judice, the court held a hearing outside the presence of the jury to determine whether the child satisfied the Bowen requirements. During the hearing, the child demonstrated that she knew her birthday, where she went to school, the names of her teachers, and her telephone number. She also testified that she understood the difference between the truth and a lie. She said it was "bad" to tell a lie. The trial judge then found that the child had satisfied the requirements and was competent to testify. Defense counsel did not object to the court's ruling at the time.
¶ 7. Bosarge's counsel cites Ivy v. State, 522 So.2d 740 (Miss.1988), for the proposition that the child's testimony could be excluded as irrelevant if the trial court determined that, because of her tender years, the child could not be expected to accurately recall and relate events as they actually occurred or to understand the importance of reporting any such recollections truthfully. This argument, however, has no merit in the present case because here the trial court found that the proposed witness, the child, was able to accurately recall and relate events as they actually occurred and understood the importance of reporting such recollections truthfully. The trial court utilized the proper legal standard and applied it correctly in determining that the child was competent to testify.

II. Sufficiency of the Evidence
¶ 8. Bosarge argues that the evidence presented against him was insufficient to support a verdict of guilty. Bosarge contends that the child's account of the factsboth from the child, herself, and through the testimony of the other State witnesseswas uncorroborated by anyone or any physical evidence. He argues that testimony of a single witness should not be sufficient to sustain a conviction in the absence of some corroboration, particularly where the opportunity for corroboration exists and the State fails to pursue or introduce that evidence.
¶ 9. Bosarge overstates his case when he says that his conviction was based on the testimony of a single witness; however, it is well settled and even conceded by Bosarge that "the testimony of a single witness whose testimony is not unreasonable on its face, and whose credibility is not successfully impeached, will sustain a conviction although there may be more than one witness testifying in opposition to such witness...." White v. State, 507 So.2d 98, 102 (Miss.1987) (quoting Henderson v. State, 187 Miss. 166, 171, 192 So. 495, 496 (1939)).
¶ 10. Bosarge has asked this Court to deviate from the long standing practice that has guided American jurisprudence for centuries, that of stare decisis, which demands that we follow and continue precedence in the absence of powerful and overriding considerations. See State Ex Rel. Moore v. Molpus, 578 So.2d 624 (Miss. 1991). The court in Moore opined that precedent should be overruled when it is erroneous, pernicious, impractical, or is "mischievous in its effect, and resulting in detriment to the public." Id. at 635.
¶ 11. Bosarge does not offer any arguments referring to the "pernicious," "impractical," or "mischievous ..." effect of the White precedent, and this Court fails to find any of its own. Moreover, even if Bosarge had cited some compelling argument for overruling existing precedent, that would be a task for our supreme court. We are duty bound to apply existing precedent; consequently, this argument lacks merit.
¶ 12. In reviewing the general claim that the evidence presented was insufficient *432 to support a verdict of guilty, appellate courts look to another well-settled principle for guidance. "We proceed by considering all of the evidencenot just that supporting the case for the prosecution in the light most consistent with the verdict." Bailey v. State, 729 So.2d 1255, 1263(¶ 41) (Miss.1999) (quoting McFee v. State, 511 So.2d 130, 133-34 (Miss.1981)). This, therefore, gives the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. Id. Next, we review the facts and inferences, and if they favor the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that the accused was guilty, then reversal and discharge are required. See Bailey, 729 So.2d at 1263. However, if the record contains substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, "the verdict is thus placed beyond our authority to disturb." Id.
¶ 13. In the case at bar, the evidence, viewed in the light most favorable to the guilty verdict, is sufficient to sustain the verdict of guilty. Not only did the child testify in detail as to the elements of the crimes, but Dr. Matherne, a clinical psychologist, also added corroborating evidence. Dr. Matherne explained to the trial court that the purpose of his consultation with the child was not only to arrive at a determination of the specifics of what happened, but also to determine the credibility of the child. Dr. Matherne testified that with his experience in examination and consultation in similar casesover thirty yearshe "felt very comfortable with reaching an opinion that the allegation was substantiated, because the information that she provided, and how she provide [sic] it, and the details of the presentation seemed to be very consistent." He went on to testify that he did not see any evidence that the child had been coached.
¶ 14. Based of this testimony, this Court finds that there is ample evidence to sustain a verdict of guilty in this case. Therefore, the trial court did not abuse its discretion in denying Bosarge's motion for a directed verdict.

III. Ineffective Assistance of Counsel
¶ 15. The standard of review for claims of ineffective assistance of counsel is whether the defendant has shown that counsel's performance was (1) deficient, and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Leatherwood v. State, 473 So.2d 964, 968 (Miss.1985). The burden of proof is on the defendant to show a result of "unreasonable legal assistance," through the use of specific acts or omissions on the part of defense counsel. See Leatherwood, 473 So.2d at 968. In assessing whether a defendant received a fair trial, despite allegations of ineffective assistance of counsel, the reviewing court requires the defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. The standard is "reasonably effective assistance." Id. The defendant must also overcome the "strong presumption" that counsel's conduct is within the "wide range of reasonable professional conduct." Id.

1. Investigation
¶ 16. Bosarge's argument in reference to defense counsel's investigation is twofold. He argues that he suffered ineffective assistance of counsel because (1) defense *433 counsel failed to investigate the claim that the child did not begin residing at the grandmother's residencethe site of the crimesuntil after school started, which was after the time period the State argued the crimes took place, and (2) counsel failed to investigate why the police came to the grandmother's residence initially.
¶ 17. Bosarge contends that the child did not begin residing at the grandmother's residence until after the school term began in September. According to Bosarge, establishing the date the child began residing at the grandmother's residence would have given him the opportunity to build a time line, creating a plausible defense to the alleged crimes. He contends that he informed counsel of his theory and provided a list of eight witnesses who would testify to corroborate his theory. He complains that counsel did not effectively investigate this theory which ultimately led to the guilty verdict.
¶ 18. Applying the Strickland test, this Court finds that defense counsel's performance was not below that of reasonable effective assistance. Bosarge has failed to prove either prong of the Strickland test. Bosarge informs the Court that counsel contacted the leasing office of the apartment complex where the grandmother resided, but was unable to acquire any helpful information. Apparently, Bosarge believes this failure to obtain helpful information was the result of an ineffective investigation. We fail to see the connection, but in any event, the date the child began living in the grandmother's residence is of no consequence. Even if the defense were to prove unequivocally that the child did not reside there, this does not prove that Bosarge did not commit an unlawful touching against the child. The child visited the grandmother's residence regularly. The child did not have to reside there to be victimized there.
¶ 19. As to the second part of the ineffective investigation argument, Bosarge argues that he summoned the police to the grandmother's residence in reference to a domestic dispute between the child's mother, and her boyfriend. He asserts that because he called the police on the child's mother, she, in retaliation, called the police back to the house and, through her child, fabricated this unlawful touching claim. Bosarge argues that had his attorney adequately investigated the initial police response to the apartment he would have been able to effectively present his argument that the child's mother prompted the child to fabricate the claim. He contends that one of the officers, Officer Pannell, who responded to the unlawful touching call, also responded to the domestic dispute call. Bosarge asserts that his ability to substantiate this theory of his defense was diminished by counsel's failure to adequately investigate the initial police response.
¶ 20. Here again we find that Bosarge has failed to meet the two-pronged requirements set out in Leatherwood. At trial, Officer Pannell testified that he was not aware of the reason for the initial response to the grandmother's residence. Furthermore, even if it could have been proven that Officer Pannell was among the officers who responded to the initial call and that it was in reference to a domestic dispute call placed by Bosarge, it is not likely that the outcome of the trial would have been different. Bosarge has failed to show this Court that but for defense counsel's inadequate investigation in reference to the initial police response the outcome would have been different. This argument lacks merit.

*434 2. The calling of witnesses
¶ 21. The second part of Bosarge's claim of ineffective assistance of counsel refers to the witnesses that defense counsel chose to call to testify. Bosarge argues that he informed his attorney of eight witnesses willing to testify as to when the child began residing in the grandmother's residence. He contends that these witnesses were crucial to his defense theory and that he was aggrieved when his attorney only called two of the eight witnesses to testify. The decision as to which witnesses to call and how to utilize them is a part of an attorney's trial strategy. In reference to appellate review of an attorney's trial strategy, the Leatherwood court, quoting Strickland, stated:
[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.
Leatherwood, 473 So.2d at 969 (quoting Strickland, 466 U.S. at 690-91, 104 S.Ct. 2052). This argument, as the ones preceding it, lacks any merit.

3. Failure to pursue a speedy trial
¶ 22. Bosarge asserts that he was prejudiced because his attorney failed to pursue a speedy trial claim. He contends that because of the undue delay of his trial, his defense was diminished to his detriment. Bosarge claims that two witnesses died and others moved away between the date of his arrest, October 1, 1997, and the date of his trial.
¶ 23. It is true that Bosarge's attorney did not present a speedy trial violation claim to the trial court. However, Bosarge presented the claim post-trial pro se, and the trial court considered it. After a hearing, which included testimony from trial counsel concerning why he did not call certain witnesses which Bosarge claimed in his motion would have helped his case, the trial court overruled the denial of the speedy trial claim. Bosarge did not appeal the court's ruling on the speedy trial claim. Rather, he chose to accuse his attorney of ineffective assistance for the failure to present the claim to the trial court.
¶ 24. In reviewing this issue, we use the same two-pronged Leatherwood analysis. Again, we find that this claim is without merit. The record reflects that Bosarge was indicted on June 11, 1998, and that on November 10, 1998, a written waiver of arraignment was filed. The waiver had been executed by Bosarge although the date that he executed it was not indicated. In the waiver, a trial date was set for January 19, 1999. Also, the waiver contained a statement that Bosarge did not request an earlier setting. On January 19, 1999, on motion of Bosarge, the trial was continued until March 22, 1999. On March 22, 1999, on motion of the State, an order was entered continuing the case for trial on May 17, 1999. The trial was held May 18-19, 1999.
¶ 25. It is clear that Bosarge's statutory right to a speedy trial was not violated because the trial was held within 270 days from the date of the waiver of the arraignment. See Mississippi Code Annotated Section 99-17-1 (Rev.2000) providing that *435 "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses ... shall be tried no later than two hundred seventy (270) days after the accused has been arraigned."
¶ 26. However, for purposes of the constitutional right to a speedy trial, the Mississippi Supreme Court has held that a delay of eight months from the date of arrest to the date of trial is presumptively prejudicial. Smith v. State, 550 So.2d 406, 408 (Miss.1989). Bosarge was arrested on October 1, 1997, but was not tried until May 18, 1999. Since more than nineteen months elapsed from the date of Bosarge's arrest to the date of trial, we must conclude on the basis of Smith that Bosarge was presumptively prejudiced. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), sets forth four factors which must be considered in determining whether a defendant's Sixth Amendment right to a speedy trial has been violated. Those factors are "length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Id.
¶ 27. The trial court determined that the bulk of the delay was chargeable to Bosarge. During the hearing on the pro se motion to dismiss for failure to grant a speedy trial, the trial judge recited that Bosarge's first attorney, Kay Wilkerson, a public defender, was allowed to withdraw on June 21, 1998, which was ten days following the indictment. There is nothing in the record to indicate when Wilkerson was first appointed to represent Bosarge. However, according to comments made by the trial judge, Wilkerson apparently represented Bosarge during some unspecified pre-indictment period which covered at least the preliminary hearing. Lisa Collums, a voluntary contract criminal defender, was substituted in place of Wilkerson on June 21, 1998. A scheduling order was entered on June 17, 1998. This order contained the following provision:
If the Defendant desires to enter a plea, Defense Counsel shall notify the District Attorney's Office on or before 5:00 p.m. July 31, 1998 by completing and returning the "Announcement Form" to the District Attorney's Office and a filing a copy in the Circuit Clerk's Office. Failure to file on or before the prescribed deadline is deemed a waiver of all speedy trial rights in furtherance of plea negotiations through the date that said cause is set for call or arraignment. The arraignment and plea shall be conducted during the month of August 1998. (On the date of the pleas the Defendant and Counsel shall appear separate [sic] Petitions to Enter a Plea of Guilty in each case for filing with the Court).
(emphasis added). The record is silent as to whether the "Announcement Form" was filed or whether any plea negotiations occurred.
¶ 28. The record reflects, according to comments of the trial judge, that on July 24, 1998, August 24, 1998, and September 29, 1998, Bosarge filed demands for a speedy trial and that on April 9, 1999, Bosarge filed a motion to dismiss for lack of a speedy trial. The April 9, 1999 motion is contained in the record but not the motions, demanding a speedy trial, which were filed on July 24, August 24 and September 29, 1998, respectively. Bosarge was incarcerated the entire eight months from the date of his arrest to the date of his indictment. However, according to the State, he was granted a bond during this period of time and could have bonded out of jail had he desired to do so but apparently *436 decided not to do so because the State of Alabama had a hold on him. The State also contends that after Bosarge was charged with committing the offenses, the victim was placed in the custody of her father and that sometime thereafter, the father's home was destroyed. The State further contends that, as a result of the destruction of the father's home, it encountered some difficulty in locating the victim. This, argues the State, accounts for the delay in presenting the matter to the grand jury.
¶ 29. As stated, two potential witnesses expired between the date of Bosarge's arrest and the date of his trial. These two witnesses were his mother and one of the grandmother's neighbors. The thrust of Bosarge's argument regarding the prejudice he suffered is that he was denied his freedom by being incarcerated for more than eight months without being indicted and tried and that the two witnesses could have established that the victim did not come to live with the grandmother until sometime in August 1997, after the commencement of school. This evidence, in Bosarge's view, might very well have persuaded the jury to find him not guilty because it would have been proof that the victim did not live at the residence during the time the incidents were supposed to have occurred. We have already pointed out the fallacy in this argument relating to the proof of residence issue, and there is no need to repeat it here. As to the issue of loss of freedom, we point out that Bosarge did not refute the State's claim that he could have gotten out on bond had he desired to do so. Therefore, we accept the State's position that he remained in jail from the date of arrest to the date of trial not because of the instant charges, but because of the detainer placed on him by the State of Alabama. Having reviewed and considered Bosarge's argument in light of the Barker factors, we cannot say that his Sixth Amendment right to a speedy trial was violated.

4. Criminal trial experience
¶ 30. Bosarge argues that his trial was defense counsel's first criminal trial, and because of counsel's lack of experience he suffered ineffective assistance of counsel. Again, Bosarge must overcome the presumption that counsel performed effectively and utilized sound trial strategy. See Leatherwood, 473 So.2d at 968. The mere fact that this was defense counsel's first criminal trial does not, in and of itself, give rise to a claim that his performance amounted to unreasonable legal assistance. As previously stated, Bosarge has the burden of proving, through the use of "specific acts or omissions," that counsel's performance was unreasonable legal assistance. Here, Bosarge has offered nothing specific, neither an act, nor an omission, to substantiate his claim. This argument has no merit.

IV. Hearsay
¶ 31. Bosarge asserts that the trial court erred in admitting hearsay statements by relying solely on the tender-years exception. Bosarge argues that the court should have considered alternative exceptions to the hearsay rule and should not have relied solely on the tender years exception. He also contends that in reviewing the out-of-court statements under the tender years exception the trial court failed to examine all the required factors such as: (1) whether there was motive to lie, (2) the timing between the declarations and the incident, and (3) the spontaneity of the statements. We point out that Rule 803(25) of the Mississippi Rules of Evidence only requires that the trial court find in a separate hearing outside the presence of the jury "that the time, content, *437 and circumstances of the statement provide substantial indicia of reliability" and that "the child either (1) testifies at the proceedings; or (2) is unavailable as a witness." M.R.E. 803(25); see also Eakes v. State, 665 So.2d 852, 865 (Miss.1995). While the courts have refused to create a hard and fast mechanism to determine the existence of reliability, several factors have been traditionally used. Id. In determining whether the statements contain the requisite indicia of reliability, the court may review factors such as: (1) spontaneity or consistent repetition, (2) the mental state of declarant, (3) use of terminology unexpected of a child of similar age, and (4) lack of motive to fabricate. Id. (citing Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)). This list of factors, however, is by no means exclusive. Id.
¶ 32. In the case at bar, the trial judge held a hearing outside the presence of the jury to determine whether the statements given by the victim to Officer Pannell, Detective Vance and Dr. Matherne contained the requisite indicia of reliability and were worthy of admission under the tender-years exception. There is no requirement that each factor be listed and discussed separately by the trial judge.
¶ 33. Once the trial court determined that the out-of-court statements made by the victim to the investigators and health care officials were admissible under the tender-years exception, there was no need to consider additional exceptions. As Eakes clearly states, there is no mechanical test the court must utilize in determining the reliability of out of court statements presented under the tender years exception. Eakes, 665 So.2d at 865. While the cases have enumerated several factors to guide the courts, they have left the discretion within the hands of the trial judge as to the application of those factors. See id. Furthermore, this Court is limited in its review of the lower court's reliability determination and must employ the legal precedent which mandates that when the lower court has used the correct standard, we will reverse a finding of admissibility only when there has been an abuse of discretion. Id. Here, the lower court used the correct standard, as described previously, and this Court is of the opinion that the lower court was correct in admitting the out-of-court statements under the tender-years exception. We do not find any abuse of discretion. As such, this argument lacks merit.

V. Opinion Testimony
¶ 34. Bosarge argues that the court erred in allowing opinion testimony as to the truthfulness of the child. He contends that he was prejudiced when the court allowed Officer Pannell and Detective Vance to testify to their opinions that the child was telling the truth about the incident, as well as the prosecutor's comment in closing argument about the child's truthfulness.
¶ 35. Officer Pannell and Detective Vance testified that they conducted full interviews of the child in an attempt to ascertain the facts of the crime. In their testimonies they described the details of the crime as the child had related to them. At the conclusion of both of their direct examinations, the prosecutor asked the officer and later the detective whether the child appeared to be certain about the crime. The officer and the detective both responded affirmatively.
¶ 36. Bosarge points out that during the closing argument the prosecutor stated, "[The child] had no reason to lie." According to Bosarge, this amounted to a comment on the witness's truthfulness and was an impermissible "personal opinion on *438 the merits of the case of the credibility of [a] witness."
¶ 37. The Mississippi Supreme Court opined in Harvey v. State, 666 So.2d 798, 801 (Miss.1995), that "attorneys have a right and duty to deduce and argue reasonable conclusions based upon the evidence, which are favorable to their clients, and they may do so whether the conclusions are weak or strong so long as they are legitimate, and it is the function of the jury to determine the logic and weight of the conclusion." Nevertheless, the test by which we determine whether an appellant should be given relief due to improper arguments is whether the natural and probable effect of improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by prejudice. Id.
¶ 38. We find that the prosecutor's comment referring to the child's lack of motive to lie did not rise to the level which created an "unjust prejudice" against Bosarge and ultimately resulted in a decision that was influenced by that prejudice. The prosecutor was obligated to argue the merits of her case, and she did just that.

VI. Correcting False Testimony
¶ 39. Bosarge complains that the prosecutor erred by not correcting testimony she knew was false. He asserts that statements made by the child, Officer Pannell, and Detective Vance were false and that this falsity was known to the prosecutor, but the prosecutor failed to make the correction.
¶ 40. Bosarge asserts that the child testified falsely that she was taken away from her mother because they were "some place they should not have been." Bosarge complains that the prosecutor was aware that this was not a true statement. He argues that the prosecutor was aware that the child knew the true reason she was taken from her mother was because of an extensive history of child abuse against the child by the mother and the mother's boyfriend.
¶ 41. The Supreme Court of the United States has ruled that a conviction obtained through the use of false evidence, known to be such by representatives of the State, compromises the accused's right of due process, as protected by the Fourteenth Amendment to the United States Constitution. See Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). The Napue court went on to rule that a "district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth." Id. at 269-70, 79 S.Ct. 1173.
¶ 42. While the plain language of the Napue court guides us to require prosecutors to correct false testimony, that which is elicited or not, it unambiguously requires the element of knowledge on the part of the prosecutor. The reasoning clearly indicates its intent to extend to and punish only those who are knowledgeable of the falsity of such testimony.
¶ 43. In the present case, the record reflects that the child was taken away after the mother was cited for trespassing. The reason given by the child was that "they [she and her mother] were some place they should not have been." That sounds to us like it could be trespassing. In any event, there is no indication in the record that the child's statement was not true. Further, assuming that the statement was false, there is also no indication in the record that the prosecutor was aware that the statement was false. Additionally, the document which Bosarge claims proves that the child's custody was transferred from the mother to the father because of abuse was not included in the appellate record. Therefore, it is outside of our range of review.
*439 ¶ 44. Bosarge also asserts that Officer Pannell offered false testimony when she testified that she was not aware of the reason for the police response to the residence immediately prior to the response that led to this cause. Bosarge argues that the prosecutor was aware of the falsity of this testimony because she announced in a prior motion hearing that Officer Pannell was in fact one of the responding officers for that very cause. The appellant contends that the prosecutor sought to conceal the fact that the previous response was in reference to a domestic dispute call made by Bosarge against the child's mother and her boyfriend. This, he argues, would have established the motive for the mother to lie about the charges against him.
¶ 45. Pursuant again to the Napue ruling, we must first discern whether the testimony was in fact false, and secondly, whether the prosecutor had the requisite knowledge of such falsity. In determining the truthfulness of the questioned testimony, the State points this Court to the transcript of record. The following questions and corresponding answers were given:
MR. STEWART: Now, the police had been out to this addressI think it is Gulf Mist Apartments?
OFFICER PANNELL: Yes, sir.
MR. STEWART: Prior to you going back out there?
OFFICER PANNELL: I'm not aware of that, sir.
MR. STEWART: Isn't it true that the Gulfport Police had been there prior on a domestic problem?
OFFICER PANNELL: Dispute. I have no knowledge of that, sir. That was the first time I had ever gone to that home myself. If they have had calls before that, I am not aware.
¶ 46. Officer Pannell clearly stated that she had no knowledge of the Gulfport Police responding to a prior domestic dispute call at the grandmother's residence, and we have no evidence before us, only Bosarge's assertion to that effect, that Officer Pannell testified falsely. Without some evidence which tends to indicate that Officer Pannell did respond to the domestic dispute call placed by Bosarge and that the prosecutor was aware of this and allowed the false testimony of Officer Pannell to be entered into evidence, we are not at liberty to alter the verdict of guilty based on this claim.
¶ 47. Bosarge also asserts that Detective Vance offered false testimony about not having contact with the child's grandmother. He argues that Vance, while not speaking directly to the grandmother, did receive a letter from her explaining that she thought the charge was not truthful. He contends that he was unjustly aggrieved by Vance's offering false testimony and the prosecutor's allowing the false testimony to be entered.
¶ 48. Again we review under the Napue standard. First, we must determine whether the statement was false. The record reflects the following exchange:
MR. STEWART: ... Did you have an opportunity to talk to the grandmother?
DETECTIVE VANCE: No, I did not. She had moved. Apparently, she was in the hospital at one point. And then she moved after that out of state, and I have not been able to interview her.
MR. STEWART: I believe, in fact, she was at the hospital the day you interviewed [the child], if I am correct about that?
DETECTIVE VANCE: May have been. I'm not certain on that.
MR. STEWART: Did you make an effort to go to the hospital and interview *440 her, andwell, answer that question first?
DETECTIVE VANCE: I think she was in the hospital for an overdose.
MR. STEWART: Right.
DETECTIVE VANCE: So, Ino, I did not go to interview her there, because at that point, the grandmother, number one, being in the hospital given those circumstances. Apparently it was some type of psychological thing that caused herbecause I think a lot of this turmoil which was going on at the time had caused some of that
MR. STEWART: Not to cut you off or anything, but did you not make an effort to go toI think she was at Memorial Hospital, to just investigate if she had seen anything?
DETECTIVE VANCE: No. I did not go to the hospital.
MR. STEWART: Wouldn'tsince she was the only adult there, besides allegedly Mr. Bosarge, wouldn't it be a good idea to go ask her?
DETECTIVE VANCE: Well, given the circumstances at the time, I don't think I could have talked to her, because if she had overdosed, I don't know what her mental condition could [sic] be, what type of drugs she had taken, and what type of drugs she was under.
(emphasis added).
¶ 49. It is clear from the previous colloquy that the nature of the questions was whether Detective Vance had spoken with the grandmother. Several references were made to traveling to the hospital to question her. The line of questions did not call for an answer to whether or not there were any statements made by her at any other time or in any other form. Further, the written statement to which Bosarge makes reference was in the record and available to the defense to be entered, subject of course to a finding of its admissibility. Finally, it is the conclusion of this Court that the statements made by Detective Vance were responsive to the questions asked and were not false in nature.
¶ 50. Finding that the statements were not false negates the need to discuss the second prong dealing with the prosecutor's knowledge of the falsity of the statements. This claim lacks merit.

VII. Comments on Defendant's Failure to Testify
¶ 51. Bosarge complains that the prosecutor made inappropriate comments about Bosarge's decision not to testify. The prosecuting attorney made the following statement in her closing argument: "And okay Detective Vance didn't go out to the hospital to talk to this woman [the grandmother] who was in the psychiatric ward for an overdose, and grill her about what happened to her granddaughter. Use your common sense. Why did she overdose? It's her boyfriend."
¶ 52. We have reviewed the closing arguments made in this case by both counsel for Bosarge and counsel for the State. That review shows that the prosecutor was responding to the following argument made by Bosarge's counsel:
Detective Vance, did anybodyI asked him you remember, I asked him why didn't the Gulfport Police Department go overdrive over to the Memorial Hospital and ask the grandmother of this little girl, whom [sic] had a good relationship with the little girl, interview her, at least. Just ask her did these things happen. That is all they had to do. All they had to do. No. Didn't want to do that. Just took thejust took the word of the little girl, what she said with her mother standing right over her.
*441 ¶ 53. Bosarge argues that the prosecutor's statement was an attempt to direct the jury's attention to his failure to testify. He further asserts that it was an effort to insinuate to the jury that "[he] had done something to the grandmother and would not testify because of it."
¶ 54. We disagree with Bosarge's interpretation that the quoted passage of the prosecutor's argument was a comment on his failure to testify. Counsel has the right and duty to address each element of his case, as well as respond to the claims and defenses of opposing counsel. Here, defense counsel in closing argument asserted that the officer failed to interrogate the grandmother even though it was indicated that she was the only person, other than Bosarge and the child, that was present during each of the three incidents. Defense counsel argued that the officer was deficient in her investigation by not questioning the grandmother whom he believed would have substantiated Bosarge's claim that the incident was fabricated. The prosecutor, on rebuttal, merely responded to defense counsel's argument that the officers did not question the grandmother and offered her view or argument as to why the grandmother was in the hospital and driven to overdose. There does not appear to be any basis in the record for the prosecutor to have suggested that the grandmother had been driven by Bosarge to take an overdose. Consequently, this comment should not have been made. However, that is a far cry from commenting on Bosarge's failure to testify. This argument lacks merit.

VIII. Double Jeopardy/Multiple Sentences
¶ 55. Bosarge contends that the trial court erred in convicting and sentencing him on three crimes which grew out of the "same set of facts." He argues that the multi-count indictment which led to three convictions and three sentences violated the double jeopardy clause and was inadequate in failing to specify the exact date(s) of the crime. Bosarge asserts that the three counts are for the same crime.
¶ 56. We find that the multi-count indictment was in compliance with Rule 7.06 of the Uniform Rules of Circuit and County Court Practices which states:
The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them. An indictment shall also include the following:.... (5) The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient.
The indictment includes accusations of three separate and distinct acts as reported by the child victim. Each act is considered a separate crime amenable to separate sentences.
¶ 57. As to the claim that the indictment fails to specify the dates the acts took place, we note that in Eakes, a similar case involving a child sexual battery charge, the Mississippi Supreme Court opined that the "failure to state the correct date shall not render the indictment insufficient." Eakes, 665 So.2d at 860. The Eakes court further reasoned that a specific date in a child sexual abuse case is not required so long as the defendant is "fully and fairly advised of the charge against him." Id. (quoting Morris v. State, 595 So.2d 840, 842 (Miss.1991)). In Eakes, the court upheld an indictment charging *442 Eakes with crimes which occurred "on, about or between," December 1, 1990 and December 24, 1990; February 1, 1991 and April 30, 1991; and "on or about" May 11 and 12, 1991. The court reasoned that "given that Eakes was fully and fairly advised of the charges against him, the lack of specific dates in the indictment is not fatal." Id.
¶ 58. In the instant case the indictment indicates that the acts occurred "on or about July 1, 1997 through September, 1997." This Court finds that the language used in the indictment was sufficient to fully and fairly advise Bosarge of the charges against him, and thus the indictment passes muster.
¶ 59. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I:UNLAWFUL TOUCHING OF A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF FIFTEEN YEARS; COUNT II: UNLAWFUL TOUCHING OF A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF FIFTEEN YEARS TO RUN CONCURRENTLY TO SENTENCE IN COUNT I; AND COUNT III: UNLAWFUL TOUCHING OF A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF FIVE YEARS TO RUN CONSECUTIVELY TO COUNTS I AND II FOR A TOTAL OF TWENTY YEARS ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, LEE, MYERS and CHANDLER, JJ., concur.