BARNES, J.,
for the Court:
¶ 1. James Lewis was found guilty of murder and sentenced to life imprisonment. Lewis is represented on appeal by the Office of the State Public Defender, Indigent Appeals Division. His counsel filed a brief consistent with Lindsey v. State, 939 So.2d 743 (Miss.2005), having found no arguable issues for appeal. Lewis was given time to file a pro se brief to raise issues for this Court’s review, but he did not do so. This Court has examined the record and finds no arguable issues warranting review. Thus, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On June 11, 2011, a crowd gathered at a Winter Street home in Jackson, Mississippi, for a party. Eighteen-year-old Dennis McDougles was among the guests in the backyard. Some of the guests were swimming in an above-ground pool, and others were dancing near the pool. McDougles was dancing and “stunting”— meaning throwing money into the air— *1291 during a song called “Make It Rain.” Shortly thereafter, at approximately 9:30 p.m., two men jumped the fence into the backyard. The men were armed with handguns, and their mouths were covered by bandannas. They were later identified as James Lewis and D’Marco Minor. The men approached McDougles, who was also armed. Words were exchanged, and McDougles ran. It appeared to witnesses that McDougles was trying to flee into the house through the back door. But before he got to the door, one of the men caught up with him and pushed him to the ground. The man held a black handgun to McDougles’s head and said: “B-, didn’t I tell you don’t move[?] I told you I’d kill you. Don’t move.” A struggle ensued, and gunshots followed. The shots were described as “steady,” and going “back and forth.” McDougles was shot multiple times and later died. The two men fled the scene. McDougles had $311, a wallet, cell phone, and keys in his pockets; nothing was taken from him during the struggle.
¶ 3. Police arrived quickly, as they were already in the neighborhood and had heard the gunshots. An ambulance arrived minutes later. While McDougles was being loaded into the ambulance, police noticed Minor walking in the area. Police deemed his behavior suspicious and detained him. Minor was wearing all white and had blood spots on his clothing.
¶ 4. As police were detaining Minor, a female ran out of a house around the corner on Peabody Street, yelling that her brother had been shot. Police were led to Lewis, who was lying on the floor in the living room, wounded. Blood was spattered on the steps leading into the house. Lewis and McDougles were both taken to the University of Mississippi Medical Center. McDougles died from blood loss shortly after arriving at the hospital. Lewis was treated and released. He did not pursue charges against anyone for his injuries. McDougles and Lewis were the only two gunshot victims in Jackson, Mississippi area hospitals that night.
¶ 5. Although the crime scene was dimly lit, several witnesses were able to identify Lewis and Minor in photographic lineups as the perpetrators. Two witnesses saw Minor at the party prior to the shooting. One of these witnesses had known Minor and Lewis her whole life. She was in the pool when the song “Make It Rain” was playing. She stated that while McDougles was tossing money into the air, Minor was “looking at [McDougles]”; “[Minor] was just standing there looking. He wasn’t where he was at, but he was looking at him.” She saw Minor leave the party shortly thereafter. When the men jumped the fence, she was able to recognize them because their bandannas were not on correctly. She testified that “the bandannas w[ere]n’t even on their face[s]. Like — it was like over their mouth[s], but you could see their nose[s] and their eyes.” And she testified Minor was wearing the same white and red shirt he had worn to the party that night. Other witnesses testified that one of the perpetrators was wearing a red shirt, and the other was wearing a black or gray shirt. Witnesses’ descriptions of the two men matched their physical traits. Witnesses described seeing a taller and shorter suspect — consistent with Lewis’s height of approximately six feet, two inches, and Minor’s height of approximately five feet, six inches.
¶ 6. Law enforcement found a handgun, spent shell casings, and a red bandanna at the scene of the crime. A black t-shirt and two additional handguns were found just south of the Peabody Street home, where Lewis was found. Ballistic testing revealed markings on the spent shell casings from the crime scene matched the three *1292 guns. However, no forensic evidence— from either bodily fluids or fingerprints— was able to be collected from the guns or bandanna. Although a mixture of DNA was obtained from the inside of the black t-shirt, Lewis was excluded as a contributor to the mixture. DNA testing revealed Lewis’s blood on Minor’s clothing.
¶ 7. Lewis was indicted on charges of capital murder and being a felon in possession of a firearm. After a trial in Hinds County Circuit Court, he was found guilty of the lesser-included offense of murder and not guilty of being a felon in possession of a firearm. He was sentenced to life in the custody of the Mississippi Department of Corrections. After his post-trial motion for a judgment notwithstanding the verdict or new trial was denied, Lewis filed this appeal.
DISCUSSION
¶ 8. A five-step process is used in cases where an indigent criminal defendant’s appellate counsel finds no arguable issues to raise on appeal. Lindsey, 939 So.2d at 748 (¶ 18). The five steps are as follows:
(1) Counsel must file and serve a brief in compliance with Mississippi Rule of Appellate Procedure 28(a)(l)-(4), (7); see also [Smith v.] Robbins, 528 U.S. [259,] 280-81, 120 S.Ct. 746, [145 L.Ed.2d 756 (2000)] (stating that “counsel’s summary of the case’s procedural and factual history, with citations of the record, both ensures that a trained legal eye has searched the record for arguable issues and assists the reviewing court in its own evaluation of the case.”).
(2) As a part of the brief filed in compliance with Rule 28, counsel must certify that there are no arguable issues supporting the client’s appeal, and he or she has reached this conclusion after scouring the record thoroughly, specifically examining: (a) the reason for the arrest and the circumstances surrounding arrest; (b) any possible violations of the client’s right to counsel; (c) the entire trial transcript; (d) all rulings of the trial court; (e) possible prosecutorial misconduct; (f) all jury instructions; (g) all exhibits, whether admitted into evidence or not; and (h) possible misapplication of the law in sentencing.
(3) Counsel must then send a copy of the appellate brief to the defendant, inform the client that counsel could find no arguable issues in the record, and advise the client of his or her right to file a pro se brief.
(4) Should the defendant then raise any arguable issue or should the appellate court discover any arguable issue in its review of the record, the court must, if circumstances warrant, require appellate counsel to submit supplemental briefing on the issue, regardless of the probability of the defendant’s success on appeal.
(5) Once briefing is complete, the appellate court must consider the ease on its merits and render a decision.
Lindsey, 939 So.2d at 748 (¶ 18) (internal citations and footnotes omitted).
¶ 9. Lewis’s appellate attorney filed a brief stating that he “diligently searched the procedural and factual history of this criminal action and scoured the record searching for any arguable issues which could be presented to the Court on James Lewises] behalf in good faith for appellate review, and upon conclusion, ha[d] found none.” Specifically, counsel asserts he reviewed for error all the requirements of Lindsey factor (2)(a)-(h). Plus he reviewed the following for potential appellate issues: (1) “the indictment and all the *1293 pleadings in the record”; (2) “any possible ineffective[-]assistanee[-]of[-]counsel issues”; (3) “jury selection, possible dismissal, voir dire, misconduct of or affecting the jury, [and] jury composition”; (4) “any speedy trial issues in light of recent decisions McBride v. State, 61 So.3d 138 (Miss.2011); Johnson v. State, 68 So.3d 1239 (Miss.2011); and Bailey v. State, 78 So.3d 308 (Miss.2012)”; (5) “sentencing issues”; (6) “medical privilege”; (7) “hearsay testimony by someone other than the person/expert conducting testing, autopsy[,] etc., in light of Burdette v. State, 110 So.3d 296 [ (]Miss.2013[) ]”; and (8) “any other possible reviewable issues.”
¶ 10. Also in compliance with Lindsey, appellate counsel sent a copy of his brief to Lewis, informed Lewis that he could find no arguable issues for appeal, and informed him that he had the right to file a pro se brief. Lindsey, 939 So.2d at 748 (¶ 18). Lewis was given thirty days to do so per order of this Court. Lewis did not file a brief. Because no issues were raised, the next step is for this Court to conduct an independent review of the record to determine if any arguable issues exist for review. Id.; Havard v. State, 94 So.3d 229, 235 (¶ 10) (Miss.2012).
¶ 11. After a thorough review of the record, we find no such issues exist. To prove Lewis committed murder, the State was required to show that Lewis killed McDougles “in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual.” Miss.Code Ann. § 97-3-19(l)(b) (Supp.2013). In addition to receiving a murder-charge instruction, the jury was instructed that Lewis may be found guilty as a principal if he did not personally commit “every act constituting the offense alleged,” but “deliberately associate[d] himself in some way with the crime and participate^] in it with the intent to bring about the crime.” Murder carries a life sentence. Miss.Code Ann. § 97-3-21 (Supp.2013).
¶ 12. We find that Lewis received proper notice of the charges against him, and that the record contains sufficient proof to establish beyond a reasonable doubt that Lewis committed murder. Witnesses at the scene, including one witness who had known Lewis her whole life, identified Lewis in a photographic lineup as one of the two men who jumped the fence and confronted McDougles. Witnesses stated that although Lewis was wearing a red bandanna, he was recognizable because his eyes and nose were not covered. Within minutes of the shooting, Lewis was found in a nearby house, wounded. Just to the south of the house were a black t-shirt and two guns. Witnesses testified that one of the perpetrators was wearing a black or gray shirt, and the two guns matched the description of the guns used during the crime. Ballistic testing showed spent shell casings found at the crime scene matched the two guns. DNA testing revealed Lewis’s blood on his codefendant’s clothing. And finally, McDougles and Lewis were the only two gunshot victims in local-area hospitals that night, and Lewis did not seek charges against anyone for his injuries. Lewis exercised his Fifth Amendment right not to testify at trial, and the defense called no witnesses. However, Lewis’s counsel thoroughly cross-examined the State’s witnesses.
¶ 13. We note that an adamant objection was made by Lewis’s counsel when the State moved to clear the courtroom of spectators during eyewitness testimony. The Sixth Amendment to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution guarantee a defendant the right to a public *1294 trial. “However, that right is not absolute, but instead must be balanced against other interests essential to the administration of justice.” Bailey v. State, 729 So.2d 1255, 1260 (¶ 24) (Miss.1999) (overruled on other grounds) (citing Waller v. Georgia, 467 U.S. 39, 45, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)). In Waller, the United States Supreme Court established the following test to determine whether a defendant’s right to a public trial is outweighed by other considerations:
[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.
Waller, 467 U.S. at 48, 104 S.Ct. 2210. The “overriding interests” advanced by the State were the eyewitnesses’ willingness to testify and justice to the victim and citizens of this State. The State asserted it could not adequately present its case if the eyewitnesses — four total — refused to testify. And the State saw no other reasonable alternatives to closing the courtroom for these witnesses. In granting the motion, the judge noted the courtroom was “far more crowded” than usual, and emotions were “running high,” creating “a potentially dangerous situation.” There was shoving amongst spectators in the hallway, and a spectator shoved the prosecutor as she was walking through the hall. In addition to receiving threats, the eyewitnesses who were called to testify reported the same vehicles continuously driving by their houses at night during the trial. We take no issue with the judge’s limited closure of the courtroom during the testimony of these witnesses for the purposes of their own safety and the safety of court personnel, and to ensure the availability of their testimony.
¶ 14. After thorough review, we find no arguable appellate issues in this case. Further, we find the evidence was sufficient to support Lewis’s conviction and sentence. The judgment of the trial court is affirmed.
¶ 15. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.